Arlene Hazel **LUNA**, Plaintiff/Appellee,

v.

**Charles Bill LUNA,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 13, 1986.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 27, 1986.

W. Charles Doerflinger, Hairrell & Doerflinger, Lawrenceburg, for plaintiff/appellee.

Charles W. Holt, Jr., Boston, Bates & Holt, Lawrenceburg, for defendant/appellant.

## OPINION

KOCH, Judge.

This appeal arises out of a divorce action filed by a wife in the Chancery Court for Lawrence County against her husband of eighteen years. The trial court, having heard the evidence without a jury, granted the wife a divorce on the grounds of cruel and inhuman treatment. The husband has appealed and challenges the trial court's decision awarding his wife periodic alimony and requiring him to pay one half of his wife's attorneys fees. We find that this appeal lacks substantial merit and, therefore, affirm the judgment of the trial court.

### I.

Arlene Hazel Luna, now fifty-three years of age, married Charles Bill Luna, now forty-seven, in Monroe, Michigan in June, 1966. This was Mrs. Luna's fourth marriage and Mr. Luna's second. The parties had no children, although Mrs. Luna had a daughter by a previous marriage.

The early years of their marriage were marred by numerous instances of infidelity on the part of both parties. Both parties were aware of their spouse's misconduct but always reconciled. Mrs. Luna testified without contradiction that she had learned the error of her ways and had become active in her church.

The parties moved to Lawrenceburg in 1974. Mr. Luna started a successful aluminum siding business. Mr. Luna generated $497,000 in business in 1983, and his gross receipts in 1984 were projected to be in excess of $650,000. Mrs. Luna, having an eighth grade education and few skills, remained at home as a housewife.

The success of Mr. Luna's business enabled him to purchase several pieces of real property. While he placed some of the property in his own name, he customarily put this property in the names of relatives and friends. Mr. and Mrs. Luna were able to live comfortably. They were able to dress well, buy luxury items, and eat out frequently. Mr. Luna filed a sworn financial statement with a local bank stating that his net worth on October 27, 1984 was $143,768.70.

Mrs. Luna testified that she thought that all was not well with her marriage in early 1984. Mr. Luna finally admitted that he was having an extramarital affair. The parties tried to reconcile but were unsuccessful. Mr. Luna moved out of their apartment in April, 1984 and continued his relationship with his paramour. Mrs. Luna filed this divorce action in September, 1984.

Mrs. Luna had returned to work at a minimum wage job. At the time of trial, she was working as a cashier at a local store. Her employment prospects are limited by her lack of experience and formal skills. She also has a number of physical limitations caused by surgery she has had since 1981. She cannot meet her financial obligations and is unable to obtain credit.

Mr. Luna claimed that he had not been "too ambitious" since Mrs. Luna filed for a divorce. While he claimed to have only limited resources, Mr. Luna was able to spend $4,000 for furniture since the parties separated. He was also able to remodel his home and lease a car for his girl friend.

Mr. Luna also stated that he had attempted to resolve his marital differences

with Mrs. Luna in early 1985. He offered to liquidate all the couple's holdings and divide the proceeds equally. When Mrs. Luna refused this offer, Mr. Luna stopped working and turned all his business over to his brother. He testified:

As of the first of this year, through my attorney, I've had my wife's attorney contacted, I was tired of this, it's been going on for several months, with no satisfaction, as far as I was concerned. I had them contacted, I offered to sell everything, right down to the family car and split the money. The offer was refused. When I did that, that made me completely in a don't care mood, and I said, "I'll just set down and quit, and I'll start selling my assets," and me and her [his girl friend] have been a living on them.

He also admitted that he was assisting his brother with the business and that he was capable of going back into business at any time.

## II.

Mr. Luna takes issue with the trial court's decision to award Mrs. Luna $125 a week in periodic alimony. He rests his position upon the bare assertions that Mrs. Luna was amply provided for in the division of the marital estate and that she is better able to provide for herself than he is. We find these arguments unconvincing.

■ In accordance with Tenn.R.App.P. 13(d), appellate courts defer to a trial court's discretionary decisions with regard to alimony awards. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.App.1984) and *Abney v. Abney*, 61 Tenn.App. 531, 541, 456 S.W.2d 364, 369 (1970). Thus, we will presume that the trial court's decisions in these matters are correct unless the evidence preponderates against them. *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn.App.1984). The evidence in this case provides ample support for the trial court's decision.

■ Determinations concerning whether alimony should be awarded and if so, the amount, depend upon the unique facts of each case. *Walker v. Walker*, 656 S.W.2d 11, 14 (Tenn.App.1983). Among the factors contained in Tenn.Code Ann. § 36–5–101(d) and in the court decisions affecting the amount of an alimony award, the most common factors are the need of the innocent spouse, the fault of obligor spouse, and the obligor spouse's ability to provide support and maintenance. *Fisher v. Fisher*, 648 S.W.2d 244, 246–47 (Tenn.1983); *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.App.1984); and *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn.App.1984).

■ Mrs. Luna has amply demonstrated her need. She presently earns approximately $480 each month and has monthly expenses that exceed $1,120. Her prospects of increasing her income are not bright. She is fifty-three years of age and physically infirm. She has little education and few skills. It is evident that she cannot support herself on her own and that the assets received in the distribution of the marital property will soon be exhausted.

■ Mr. Luna admits that his infidelity has caused the failure of this marriage. At the same time, his efforts to demonstrate that he is unable to pay alimony ring hollow. The record shows that since the parties' separation, he has been able to buy expensive furniture, renovate his house and lease an automobile for his girl friend. His argument that he has no income is not worthy of belief. While he has turned over his lucrative aluminum siding business to his brother, he concedes that he could step in and take over the business at any time. He has retained his tools and equipment and continues to assist his brother in the business. His transparent effort to limit his income carried no weight with the trial court and likewise carries no weight with this Court. A person's disinclination to continue to earn what he is capable of earning is no reason to set aside a trial court's considered alimony award. See *Harwell v. Harwell*, 612 S.W.2d 182, 184–85 (Tenn.App.1980). See also 24 Am.Jur.2d *Divorce and Separation* § 579 (1983) and 27A C.J.S. *Divorce* § 233(3) (1959).

## III.

Finally, Mr. Luna asserts that the trial court erred by requiring him to pay $1,500 of Mrs. Luna's attorney's fees. While he does not contest that Mrs. Luna has incurred these expenses, he claims that she received sufficient assets in the property settlement to pay all her legal fees.

A trial court has the authority to make an additional award to an innocent spouse to defray the legal expenses resulting from the divorce. *Palmer v. Palmer,* 562 S.W.2d 833, 838–39 (Tenn.App.1977). These decisions, like those involving alimony, are within the discretion of the trial court. *Fox v. Fox,* 657 S.W.2d 747, 749 (Tenn.1983) and *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn.App.1983). Thus, this Court will decline to disturb a trial court's decision regarding attorneys fees unless the decision is not supported by a preponderance of the evidence.

That Mrs. Luna received a share of the parties' marital estate does not necessarily provide a reason to deny her an award for her attorney's fees. This Court has, in fact, approved an award for attorney's fees, even when the spouse had resources of her own, in order to avoid requiring the spouse to deplete her source of income. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.App.1980).

The Lunas' marital estate was very modest. The property Mrs. Luna received through the division of this estate amounted to $4,000. Given her age, physical condition, monthly expenses, and limited income, this award was likewise very modest. Had the trial court not awarded Mrs. Luna a portion of her attorney's fees, she would have been required to exhaust most of her liquid assets to pay her lawyer. This would not have been appropriate based upon the facts of this case. Thus, we conclude that the trial court's decision with regard to Mrs. Luna's attorney's fees was amply supported by the record.

## IV.

The judgment of the trial court is affirmed, and the case is remanded for any further proceedings that may be required. The costs of this appeal are taxed to Charles Bill Luna and his surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.