# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

PAMELA LEMOINE FORD, )
)
      Plaintiff/Appellant, ) **Dyer Chancery No. 92-5**
)
VS. ) **Appeal No. 02A01-9507-CH-00153**
)
MICHAEL BURKE FORD, )
)
      Defendant/Appellee. )

APPEAL FROM THE CHANCERY COURT OF DYER COUNTY
AT DYERSBURG, TENNESSEE
THE HONORABLE JOE G. RILEY, JUDGE

FILED

**October 3, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**MARTIN B. DANIEL**
Memphis, Tennessee
Attorney for Appellant

**MARK D. JOHNSTON**
Dyersburg, Tennessee
Attorney for Appellee

**REVERSED IN PART, AFFIRMED IN PART & REMANDED**

      **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

      In this post-divorce proceeding, Pamela Ford ("wife") filed a petition to modify child

support and alimony. Although the trial court declined to increase alimony, the court increased the amount of child support that Michael Ford ("husband") was obligated to pay based upon his increased income. Wife has appealed and argues that the trial court erred in several respects. First, she asserts that the trial court erred in holding that the husband's receipt of principal from an irrevocable trust is not "gross income" as that term is defined within the child support guidelines. Next, she contends that the trial court improperly failed to consider the value of the trust in increasing child support. Furthermore, wife argues that the trial court should have imputed income to husband based upon his voluntary unemployment. Finally, wife argues that the trial court erred in denying her request for an increase in alimony. For the reasons stated below, the judgment below is affirmed in part, reversed in part, and remanded for further proceedings.

The parties to this action married in 1986, and divorced six years later. The parties had two minor children. In connection with the divorce proceedings, husband and wife entered into a marital dissolution agreement. The agreement provided as herein pertinent that wife was to have sole custody of the children and that husband was to pay child support in the amount of $173.87 per week, plus 32% of his annual bonus. The agreement obligated husband to maintain health insurance for wife for a period of three years, and to maintain car insurance for wife for as long as she owned the car. The agreement did not make any other provision for rehabilitative or periodic alimony.

At the time of the divorce, husband served as vice-president of Ford Contracting Company, one of several companies ("the Ford companies") in which husband held an ownership interest. After the divorce in 1993, husband sold his ownership interest in the Ford companies to his brother and sister for $900,000.00. In addition, husband sold his interest in another of the Ford companies for $404,539.00. Husband placed the proceeds from the two sales into an irrevocable living trust at First Tennessee Bank. Husband also placed various stocks into a custodial account at First Tennessee Bank.

The terms of the trust provide that husband is to receive all income from the trust

2

and is allowed to withdraw up to 3% of the trust principal each year. During 1994, the trust produced income in the amount of $58,775.05, and husband withdrew $26,973.05 from the trust principal. Husband received approximately $7,500.00 in income from the custodial account. Husband has not been employed since he sold his interest in the Ford companies in 1993.

Wife filed a petition to modify child support based upon the increase in husband's income that resulted from the sale of his interest in the Ford companies. She also filed a petition to modify the final divorce decree, requesting an increase in alimony.

Following a trial on the matter, the trial court denied wife's request for alimony modification. In addition, the court below held, without explanation, that husband's withdrawal of $26,973.05 of trust principal did not constitute "gross income" under the child support guidelines. In order to assess child support, the court calculated husband's income by adding the amount of income that husband received from the custodial account to the amount that husband received from the trust account. Then, the court deducted administrative expenses from that figure to yield an annual income of $62,079.00. The trial court ultimately held that, pursuant to the guidelines, husband should pay child support in the amount of $1,146.00 per month, or $326.77 per week, adjusted upward by $400.00 per month for ten months for extraordinary educational expenses. The trial court declined to impute income to husband based upon his potential income because, according to the court, husband had not willfully rendered himself unemployed in order to avoid paying child support.

We review child support decisions in accordance with T.R.A.P. 13(d), affording the trial court's factual findings a presumption of correctness. However, no presumption of correctness applies to the trial court's interpretation of the child support guidelines.

Wife's first contention on appeal is that the husband's withdrawal of $26,973.05 of trust principal constitutes "gross income" within the meaning of the child support guidelines.

3

Neither party has directed us to, nor can we find, any Tennessee authority specifically addressing this issue.

The child support guidelines define "gross income" as follows:

> [A]ll income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration...workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment....

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a) (1994).

In our opinion, husband's withdrawal of trust principal constitutes "gross income" within the meaning of the guidelines. Our interpretation is consistent with both the broad definition of "gross income," which includes all income from any source, and with one of the primary goals expressed in the guidelines, which is "[t]o ensure that when parents live separately, the economic impact on the child is minimized and to the extent that either parent enjoys a higher standard of living, the child share in that higher standard." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(2)(e) (1994).

Accordingly, if and when any distributions of the trust corpus are made to husband, husband shall pay 32% of that amount to wife as child support. Since husband has already exercised his option to withdraw principal from the trust in 1994, he thereby became subject to his obligations under the guidelines for that calendar year.

Wife next urges this court to hold that the trust principal should be considered as a valuable resource of the husband meriting an upward deviation from the guidelines. The provision upon which she relies states:

> (f) Valuable assets and resources (expensive home or automobile which seems inappropriate for the income claimed by the obligor) of the obligor should be considered for the purpose of imputing income and increasing the support award

4

in any case if the court finds that equity requires it.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.04 (1)(f) (1994).

In our opinion, equity does not require the imputation of income to husband based on the trust account under the facts of this case.

We agree with wife, however, that the trial court erred in failing to impute income to husband based upon his voluntary unemployment. The relevant provision states:

> [I]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d) (1994).

The trial judge stated in his Memorandum Opinion, "It does not appear that the father is avoiding employment simply to lessen his child support. This is not an appropriate case to increase support due to willful unemployment." The trial judge's statements in this regard suggest that he misconstrued "willfully and voluntarily unemployed" to mean that income may be imputed to an obligor only when he or she becomes unemployed with the intent to avoid child support obligations. Although we do not deem the trial judge's interpretation to be unreasonable in light of the guidelines' use of the word "willfully," we respectfully disagree that there must be such an intent in order to impute income to an obligor spouse.

On the contrary, there are several cases in which courts of this state have imputed income based on earning capacity to an unemployed or underemployed obligor without any showing of an intent to avoid child support obligations. See, e.g., Luna v. Luna, 718 S.W.2d 673 (Tenn. App. 1986); Harwell v. Harwell, 612 S.W.2d 182 (Tenn. App. 1980); Riley v. Riley, No. 03A01-9408-CH-000268, 1995 WL 311331 (Tenn. App. May 22, 1995); Keck v. Keck, No. 03A01-9102-CH-00069, 1991 WL 94395 (Tenn. App. June 6, 1991); Gutknecht v. Gutknecht, No. 01A01-9101-CH-00015, 1991 WL 79560 (Tenn. App. May 17, 1991).

5

Examining the language of the subject provision in light of the policies underlying the guidelines and applicable case law, we hold that there is no requirement that there exist evidence of an obligor's intent to avoid support obligations in order to impute income to the obligor based upon his or her potential income.

The record reveals that husband was 35 years old at the time of trial. He graduated from high school and attended college for approximately three years. Husband testified that he worked as a superintendent on construction jobs, and served as vice-president of Ford Contracting Corporation for a period of time. At trial, husband testified as follows:

Q. Are you currently employed, Mr. Ford?
A. No, sir.
Q. Why not?
A. I don't--I don't see why I have to be. Is there a law that says I have to be employed?
           *      *      *      *
Q. Are there any physical disabilities that would prevent you from getting a job?
A. No.

Prior to his decision to discontinue working in 1993, husband's salary was $650.00 a week. It is thus apparent that although husband is disinclined to work, he possesses the ability to earn a substantial income. On remand, the trial court shall consider husband's previous work experience and educational background in determining his potential income and calculate child support accordingly.

Finally, wife seeks an increase in alimony based upon her alleged increased needs and husband's increased income. Wife argues that the provisions of the original decree failed to provide her with enough money to enable her to maintain the same standard of living that she enjoyed when she was married or to rehabilitate herself by going back to school.

Initially, we note that contrary to husband's assertion, his obligation to contribute the monthly payments for wife's health and auto insurance is alimony *in futuro,* and is thus subject to modification upon a showing of a change in circumstances pursuant to T.C.A.

6

§ 36-5-101. <u>Carter v. Carter</u>, No. 01-A-01-9005-CV-0088, 1990 WL 166596 (Tenn. App. Nov. 2, 1990).

The party seeking modification of an alimony award bears the burden of proving that, since the time of the original award, there has been a substantial and material change of relevant circumstances that was not foreseeable at the time of the entry of the final decree. <u>McCarty v. McCarty</u>, 863 S.W.2d 716 (Tenn. App. 1992); <u>Elliot v. Elliot</u>, 825 S.W.2d 87 (Tenn. App. 1991). The factors delineated in T.C.A. § 36-5-101 that apply to the determination of the initial alimony award also apply in determining whether there has been a change of circumstances justifying a modification of the award. <u>Brewer v. Brewer</u>, 869 S.W.2d 928, 935 (Tenn. App. 1993). The two most important factors in awarding alimony are need and ability to pay. <u>Elliot</u>, 825 S.W.2d 87.

Our review of the record reveals insufficient proof of a substantial and material change of circumstances occurring since the entry of the final decree. Although husband's income has increased, wife has not demonstrated to this court's satisfaction that she has experienced any material change in circumstances that was unforeseeable at the time of the original decree. We therefore affirm the judgment below with respect to alimony.

The wife also asks this court to award her attorney's fees incurred in connection with her appeal. We deem this to be an appropriate case for husband to pay one-half of wife's legal expenses for this appeal. Therefore, on remand, the trial court shall determine the amount of attorney's fees reasonably incurred in this appeal and enter judgment against husband for one-half of the amount so ascertained.

In accordance with the foregoing opinion, the judgment of the trial court is reversed in part, affirmed in part, and remanded for further and necessary proceedings consistent with this opinion. Costs on appeal are taxed to husband.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.

8