IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

FILED

November 4, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

BRENDA S. (CUNNINGHAM) )
CAMPBELL, )
)
   Plaintiff/Appellee, ) Hardin Chancery No. 5643
)
VS. ) Appeal No. 02A01-9711-CH-00286
)
CHARLES S. CAMPBELL, )
)
   Defendant/Appellant. )

APPEAL FROM THE CHANCERY COURT OF HARDIN COUNTY
AT SAVANNAH, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR

JEFFERY D. PARRISH
BOROD & KRAMER, P.C.
Memphis, Tennessee
Attorney for Appellant

STEPHANIE L. PRENTIS
Savannah, Tennessee
Attorney for Appellee

AFFIRMED

ALAN E. HIGHERS, J.

CONCUR:

DAVID R. FARMER, J.

HOLLY KIRBY LILLARD, J.

Defendant Charles E. Campbell (Husband) appeals the final decree of divorce entered by the trial court which distributed the parties' property and ordered Husband to pay child support and alimony to Plaintiff/Appellee Brenda S. Cunningham Campbell (Wife). On appeal from the final decree, Husband contends that the trial court erred in the following respects: (1) in imputing income of $2,000 per month to Husband for purposes of calculating his child support obligation; (2) in allocating to Husband a $2,600 debt with the Hardin County Bank; (3) in awarding Wife the marital home valued at $44,000; and (4) in awarding Wife $150 per month and other amounts as alimony. We affirm.

At the time of the divorce trial in May 1997, the parties had been married for twenty-nine years and had a thirteen-year-old daughter. This divorce proceeding was precipitated by Husband's affair with an acquaintance of the parties named Shelia West. After leaving the marital home in August 1996, Husband purchased a mobile home and placed it next door to the marital home on a lot owned by his brother. Husband and his paramour then proceeded to live together in the mobile home within thirty to fifty yards of the former marital residence. At the time of trial, Husband and West still were living in the mobile home, and Wife and the parties' teenage daughter were living in the marital home.

In addition to leaving the marital home, Husband locked Wife out of the parties' boat repair business which they had operated next door to the marital home since 1983. Husband repaired boats for the business, while Wife did the bookkeeping. Wife also washed boats, picked up parts, helped customers, and performed other duties as needed. After Wife was prevented from participating in the business, Husband's paramour began working in the business, assuming Wife's former duties. During these proceedings, Husband paid no support to Wife; however, Husband did pay the utility bills for the former marital home because the home's and the business's utilities were on the same line.

In its final decree, the trial court made the following rulings of which Husband now complains: (1) imputed income of $2,000 per month to Husband and ordered him to pay child support to Wife in the amount of $338 per month; (2) allocated to Husband a $2,600

2

debt with the Hardin County Bank; (3) awarded Wife the marital home valued at $44,000; and (4) made various awards of alimony to Wife, including $150 per month in periodic alimony, payment of Wife's electric and water utilities, Husband's portion of the parties' 1995 income tax refund in the amount of $2,000, and $1,000 in attorney's fees.

On appeal, Husband first contends that the trial court erred in imputing income of $2,000 per month to Husband for purposes of calculating his child support obligation. We disagree with this contention. At trial, the issue of Husband's income was sharply disputed. Husband, introducing copies of his income tax records for 1996 and previous years, claimed that his annual income was only about $6,000; however, other evidence supported Wife's claim that Husband was capable of earning more and that Husband did, in fact, earn more than $6,000. Wife testified that Husband operated the boat repair business only nine months per year and that Husband spent the other three months deer hunting. According to Wife, Husband sometimes turned down work, either because he did not want to do a particular job or because the job was requested too close to deer season. Wife also observed Husband accept a cash payment of approximately $1,000 which was not reported by Husband, and Wife testified that Husband's reported income did not include the sale of a boat to a Jackson businessman. Husband himself admitted that he failed to report a $600 cash payment from another source. Husband explained that he "overlooked" the ticket for this sale. Husband additionally admitted that he had "a lot of slack time in the winter" months, during which he sometimes went hunting.

Based on the foregoing evidence and, specifically, the evidence that Husband did not work all twelve months of the year and that he failed to report certain cash payments as income, we conclude that the trial court was justified in imputing a monthly income of $2,000 to Husband. The trial court was authorized to impute income to Husband in the event the court found Husband to be willfully and voluntarily underemployed. Anderson v. Anderson, No. 01A01-9704-CH-00186, 1998 WL 44947, at **3-5 (Tenn. App. Feb. 6, 1998); McGaffic v. McGaffic, No. 03A01-9707-CV-00286, 1997 WL 772899, at **3-4 (Tenn. App. Dec. 9, 1997); Ford v. Ford, No. 02A01-9507-CH-00153, 1996 WL 560258, at **3-4

3

(Tenn. App. Oct. 3, 1996); Smith v. Smith, No. 02A01-9109-CH-00209, 1993 WL 90378, at *5 (Tenn. App. Mar. 30, 1993); Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(d) (revised 1994). Moreover, Husband had the burden of proving his income and expenses from the boat repair business. Kirchner v. Pritchett, No. 01A01-9503-JV-00092, 1995 WL 714279, at *5 (Tenn. App. Dec. 6, 1995). In the absence of reliable evidence of Husband's income, the trial court was authorized to impute an annual income of $25,761 (or $2,146.75 per month) to Husband. Id.; Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(e) (revised 1994).[1] In light of this authorization, Husband cannot now be heard to complain that the trial court imputed an annual income of $24,000 to him.

Husband insists that, in accordance with the Child Support Guidelines, his previous tax returns did constitute reliable evidence of his income. See Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(e) (revised 1994).[2] Obviously, however, the trial court found that Husband's proffered tax returns were not reliable, and we conclude that the evidence does not preponderate against this finding. See T.R.A.P. 13(d).

Relying on the parties' tax records, Husband similarly contends that the trial court erred in awarding alimony to Wife. Wife's income tax return for 1996 indicated that she earned approximately $5,000 per year as a cook in a school cafeteria. Wife testified that she was able to earn an additional $1,000 in the summer months cleaning cabins and lake houses. Husband argues that, inasmuch as the parties earn comparable incomes, Wife has failed to demonstrate her need for alimony or Husband's ability to pay alimony.

---

[1]The Child Support Guidelines provide that

> When establishing an initial order and the obligor fails to produce evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years), and the court has no other reliable evidence of the obligor's income or income potential, gross income for the current and prior years should be determined by imputing annual income of $25,761. . . .

Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(e) (revised 1994).

[2]See supra note 1.

We conclude that this issue is without merit. The evidence showed, and the trial court found, that Husband had a greater earning ability than was reflected by his income tax returns. Moreover, the evidence showed that Husband had actual income that was not reported on his tax returns. In light of this evidence, we hold that the trial court properly rejected Husband's claim that he lacked the ability to pay alimony to Wife. See Luna v. Luna, 718 S.W.2d 673, 675 (Tenn. App. 1986) (rejecting husband's claim that he was unable to pay alimony where husband admitted that his infidelity caused marriage's failure and his testimony as to lack of income was "not worthy of belief").[3]

We also affirm the trial court's decision to award the marital home to Wife. Trial courts have broad discretion in dividing marital estates, and their decisions are afforded great weight on appeal. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983); Harrington v. Harrington, 798 S.W.2d 244, 245 (Tenn. App. 1990). In making its equitable distribution, a trial court is not required to equally divide the property and, specifically, the court is not required to divide the equity in the marital home. Hooper v. Hooper, No. 01A01-9607-CV-00328, 1997 WL 15224, at *2 n.3 (Tenn. App. Jan. 17, 1997). By statute, the trial court is authorized to award the marital home to either party, after considering the relevant factors set forth in the property distribution statute and giving special consideration to the spouse having physical custody of any children of the marriage. Id.; Hull v. Hull, No. 01A01-9403-CV-00139, 1994 WL 649147, at *3 (Tenn. App. Nov. 18, 1994); T.C.A. §§ 36-4-121(c), (d) (1996).

In the present case, Wife was awarded custody of the parties' teenage daughter. Additionally, other factors listed in the property distribution statute weighed heavily in Wife's favor. The parties were married for twenty-nine years, and Wife had experienced numerous health problems in recent years. See T.C.A. §§ 36-4-121(c)(1), (2) (1996). Over the years, Wife made a substantial contribution to the parties' boat repair business

---

[3]We note that the trial court's requirement that Husband continue to pay for the Wife's utilities appears to violate the statutory provision that alimony should be awarded "by fixing some definite amount or amounts to be paid." Franklin v. Franklin, 746 S.W.2d 715, 718 (Tenn. App. 1987); Reagan v. Reagan, No. 03A01-9605-CV-00179, 1996 WL 666740, at *3 (Tenn. App. Nov. 18, 1996); T.C.A. § 36-5-101(a)(2)(A) (1996). Husband, however, has not challenged the award on this basis.

for which she received no salary. See T.C.A. § 36-4-121(c)(5) (1996). Wife also was awarded no share of the business in the trial court's final divorce decree. Under these circumstances, the trial court properly exercised its discretion in awarding the marital home to Wife.

Husband contends that, in awarding the marital home to Wife, the trial court improperly dwelled on Husband's fault in the breakup of the marriage. The trial court was required to equitably distribute the parties' marital property without regard to fault. Brown v. Brown, 913 S.W.2d 163, 168 (Tenn. App. 1994); Bowman v. Bowman, 836 S.W.2d 563, 567-68 (Tenn. App. 1991); T.C.A. § 36-4-121(a)(1) (1996). The trial court's award of the marital home to Wife, however, was designated by the court as alimony in solido, which is specifically authorized by the alimony and support statute. See Pierce v. Pierce, No. 03A01-9707-GS-00250, 1998 WL 47872, at *4 (Tenn. App. Feb. 9, 1998) (awarding husband's interest in marital home to wife as alimony in solido and noting that T.C.A. § 36-5-101(a)(1) specifically empowers courts to award spousal support out of other spouse's property). In awarding alimony, the trial court was authorized to consider, among other factors, the parties' relative fault in the breakup of the marriage. Long v. Long, 957 S.W.2d 825, 830 (Tenn. App. 1997); Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. App. 1988); T.C.A. § 36-5-101(d)(1)(K) (1996). Accordingly, whether the award of the marital home to Wife in this case is designated as alimony in solido or as property distribution, we hold that the trial court acted within its discretion in making the award.

Finally, we affirm the trial court's decision to allocate to Husband the $2,600 debt with the Hardin County Bank. As with its distribution of the marital estate, the trial court was vested with broad discretion to allocate debts incurred during the parties' marriage. See Houghland v. Houghland, 844 S.W.2d 619, 624 (Tenn. App. 1992); Yaffe v. Yaffe, 1989 WL 76310, at *2 (Tenn. App. July 12, 1989), perm. app. denied (Tenn. Oct. 2, 1989). Husband contends that he should not be required to pay this debt because the debt arose as the result of certain post-separation actions taken by Wife whereby she converted marital funds to separate funds. After reviewing the evidence concerning this issue, we

6

conclude that, regardless of the reason Husband incurred this debt, the trial court acted within its discretion in allocating the debt to Husband.

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Husband, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.