## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

TOMMY EUGENE STOCKMAN, )
)
    Petitioner/Appellant, )    Appeal No.
)    01A01-9801-CH-00026
v. )
)    Williamson County Chancery
DORIS LORAINE STOCKMAN )    No. 23065
)
    Respondent/Appellee. )
)

**FILED**

**August 17, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR WILLIAMSON COUNTY

THE HONORABLE HENRY DENMARK BELL PRESIDING

GEORGE M. ALLEN
WISCHHOF & ALLEN
GLANCY SQUARE, SUITE 207
110 GLANCY STREET
GOODLETTSVILLE, TN 37072

ATTORNEY FOR PETITIONER/APPELLANT

DENISE ANDRE
415 BRIDGE STREET
P.O. BOX 1022
FRANKLIN, TN 37065

ATTORNEY FOR RESPONDENT/APPELLEE

**AFFIRMED & REMANDED**

                            PATRICIA J. COTTRELL, JUDGE

CONCUR:
CANTRELL, J.
CAIN, J.

**OPINION**

In this appeal, Tommy Eugene Stockman ("Husband") seeks to be relieved from his obligation to pay rehabilitative alimony to his former wife, Doris Loraine Stockman ("Wife"). In support of his request, Husband asserts that Wife's cohabitation with another man terminates his obligation, that Wife has no need for the rehabilitative alimony, and that Wife has made no efforts at rehabilitation. Under the Marital Dissolution Agreement, which was incorporated into the final order of divorce, Husband agreed and was ordered to pay rehabilitative alimony in the amount of $1,000.00 per month for 120 months or until Wife's death or remarriage. He made the first 30 alimony payments, and then brought this action maintaining that his obligation should be terminated. After an October 7, 1997 trial, the trial court denied Husband's petition.[1] We affirm.

The parties were divorced on April 13, 1995, on the ground of irreconcilable differences. At that time, Husband was earning approximately $60,000 annually. Wife, then 57 years old, suffered from two chronic health problems, a degenerative bladder condition and fibromylasia, a condition which affected her muscles and tendons and rendered her unable to stand for long periods of time. She had a high school education and had worked as a secretary and bookkeeper for 35 years. At the time of the divorce, she earned approximately $21,759 per year.

From June to December 1995, Wife co-owned a jewelry business with her daughter while maintaining her employment as a secretary/bookkeeper. Sometime between July and December 1996, however, Wife lost the latter job

[1]Because the trial was not transcribed, the parties rely on a Statement of Evidence, which was modified and approved by the trial court.

when her employer went out of business. She received unemployment compensation for approximately six months while she sought another job. During that time, she purchased a home computer and computer manuals to upgrade her skills. Wife eventually accepted employment in a retail store. Because she was unable to stand on her feet for hours at a time due to her illnesses, she was forced to quit that job after one week. Since June 1997, Wife has worked at Barnes Plumbing at a yearly salary of $23,400. Her job provides no benefits.

Since the divorce, Wife has entered into a relationship with another man. The two possess a joint checking account, jointly purchased a residence in May 1996, and were living together at the time of the trial herein.

## I.

Husband first maintains that his obligation to pay alimony must cease because cohabitation is tantamount to remarriage, an act which would have terminated Wife's alimony under the Marital Dissolution Agreement. Neither the Marital Dissolution Agreement nor the final decree appears in the record on appeal. However, both parties agree, and the Statement of the Evidence provides, that the agreement provided for Husband to pay "rehabilitative alimony" of $1,000 per month for 120 months, beginning May 1, 1995, and ending upon payment in full or Wife's death or remarriage.

We reject Husband's assertion that cohabitation is equivalent to remarriage for purposes of terminating the alimony under the agreement. The language used by parties to an agreement must be given its usual and ordinary meaning when interpreting a contract. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Remarriage means

-3-

another marriage, nothing less. The law gives unique status and effect to marriage and does not apply the same benefits and burdens to other types of relationships. *See, e.g., Tyler v. Tyler*, 671 S.W.2d 492, 494 (Tenn. App. 1984); Tenn. Code Ann. § 36-4-121(b)(1) (1996). This Court cannot and will not insert an additional condition for termination which the parties did not contemplate at the time of the agreement. Cohabitation is not tantamount to marriage, and the Marital Dissolution Agreement dictates only that remarriage or death will terminate the support agreement. Therefore, Husband's first argument must fail.

## II.

Husband next maintains that Tenn. Code Ann. § 36-5-101(a)(3) (Supp. 1998) justifies termination of the rehabilitative spousal support. That statutory provision creates a rebuttable presumption that the recipient of "alimony in futuro" who lives with a third person is either receiving support from the third person or is contributing to the third person's support and no longer needs the previously awarded alimony. Tenn. Code Ann. § 36-5-101(a)(3). Once the presumption arises, the alimony recipient bears the burden of demonstrating a need for the previously awarded alimony, notwithstanding the cohabitation.[2] *Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn. App. 1983).

Husband further argues that Wife garners significant financial benefit from cohabitating with another man, giving evidentiary support to the legal presumption that Wife no longer requires the amount of support previously awarded. Wife responds that the rebuttable presumption that a spouse cohabiting with a third party no longer needs alimony applies only to alimony

---

[2]Tenn. Code Ann. § 365-101(a)(3), where applicable, merely shifts the evidentiary burden in a modification proceeding; it does not require termination of support. *Isbell v. Isbell*, 816 S.W.2d 735, 738 (Tenn. 1991).

*in futuro.*

By its terms, the statutory presumption applies "where a person is receiving alimony in futuro." Tenn. Code Ann. § 36-5-101(a)(3). In *Isbell v. Isbell*, 816 S.W.2d 735 (Tenn. 1991), the Supreme Court determined that the presumption created in subsection (a)(3) was applicable only to long-term, permanent alimony and not to temporary rehabilitative support, which at that point in time was a judicially-created type of alimony. *Id.* at 738.

In 1993, the General Assembly amended Tenn. Code Ann. § 36-5-101 to provide as follows: "Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic [*in futuro*] alimony."[3] 1993 Tenn. Pub. Acts, ch. 243. Because this provision specifically differentiates rehabilitative support from the other two kinds of support, the legislature cannot be presumed to have intended that the term "alimony *in futuro*" include rehabilitative support.

In *Rust v. Gerbman*, No. 01-A-01-9608-CH-00361, 1997 WL 266844 at *4 (Tenn. App. May 21, 1997) (no Tenn. R. App. P. 11 application filed), this court rejected the argument that subsection (a)(3) applies to rehabilitative alimony. The court noted that the statute itself refers specifically to alimony *in futuro*, not to rehabilitative alimony, "and that the two forms of modifiable alimony are based on opposite findings as to the possibility of the obligee spouse becoming capable of providing his or her own support." *Rust v. Gerbman*, 1997

_____

[3]As the law now stands, awards of alimony may be *in solido* (for a definite amount), *in futuro* (for an indefinite total amount over an indefinite amount of time), or rehabilitative. Alimony *in solido* reflects a goal of certainty and finality though an award of monthly payments for a definite period with no conditions or terminating factors. *See Self*, 861 S.W.2d at 362. It is not modifiable. *See id.* Alimony *in futuro*, which is modifiable, continues support that was incident to the marital relationship. *See id.*

WL 266844 at * 5. Thus, Tenn. Code Ann §36-5-101(a)(3) does not apply to rehabilitative support.

As implied in *Gerbman*, because of the 1993 amendment, the question for this court is no longer whether the award is more like alimony *in solido* or alimony *in futuro*. The only question is whether the instant award is, in fact, rehabilitative support and maintenance.

Correctly categorizing the type of alimony awarded in a particular situation may be challenging. *See Rust v. Gerbman*, 1997 WL 266844 at *4. Prior to the statutory establishment of rehabilitative support as a separate classification of alimony, our courts generally considered duration and definiteness when seeking to classify a particular award, usually for the purpose of determining its modifiability. However, in *Towner v. Towner*, 855 S.W.2d 888 (Tenn. 1993), our Supreme Court found that the purpose of the award, rather than its contingencies or method of payment, was the determinative factor. Similarly, in *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993), the Court stated:

> Mrs. Self insists, and the Court of Appeals held, that since the decree provides that the payments will terminate upon Mrs. Self's death or remarriage, the uncertainty of the duration of the payments prevents the award from being characterized as *in solido*. This argument gives credence to form rather than substance. Even though some prior decisions have distinguished awards as *in solido* or *in futuro* by the definiteness of the term of the award, that distinction actually reflects the essential purpose of each award–rehabilitative support is designed to accomplish a stated result within a limited time, while *in futuro* support continues the support that was incident to the marriage relationship.

*Self,* 861 S.W.2d at 361-362.

Like the two other types of alimony, the distinguishing characteristic of rehabilitative alimony is its purpose, which is "to provide a temporary income

during a period of adjustment and effort of the dependent spouse to become partially or totally self-sufficient." *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. App. 1997). In other words, rehabilitative alimony is intended to enhance an individual's capacity to function independently and achieve economic security. *See Smith v. Smith*, 912 S.W.2d 155, 160 (Tenn. App. 1995).

Here, the parties in the Marital Dissolution Agreement and the trial court, by incorporating that agreement, identified the support as rehabilitative. Husband's petition for modification made the same characterization. The support was set for a specific duration. The record herein does not include the final decree or the Marital Dissolution Agreement. However, the Statement of Evidence provides, "at the time of the entry of the final decree of divorce, and as noted in the Marital Dissolution Agreement, there was a disparity in the 'earning capacity' of the Parties and a need for rehabilitative alimony by the Respondent." We are unable to review any further findings by the trial court or any further statements of intention by the parties regarding the initial award of alimony. However, there is nothing in the record before us to indicate that the purpose of the rehabilitative alimony award was other than to enhance Wife's ability to become economically self-sufficient. At the time of divorce, Wife was 57 years old and had been employed for 35 years, and the parties apparently agreed that ten years of support would give her the opportunity to become independent of Husband's support as she approached retirement.

The law professes a distinct preference for rehabilitative alimony "whenever possible," and it is the type of support to be awarded unless the trial court finds that rehabilitation is not feasible. Tenn. Code Ann. §36-5-101(d)(1). This record contains no such findings. These circumstances convince us that the

alimony is rehabilitative. Therefore, Tenn. Code Ann. §36-5-101(a)(3)'s rebuttable presumption does not apply to the award of rehabilitative alimony herein and, therefore, does not shift the evidentiary burden to Wife to prove she still needs the support.

III.

Notwithstanding the non-applicability of the statutory presumption arising from cohabitation, we must consider Husband's assertion that the evidence regarding the economic impact of his former wife's cohabitation demonstrates that she no longer needs the spousal support she receives from him.

It is now clear that an award of rehabilitative alimony remains modifiable by the courts. Tenn. Code Ann. § 36-5-101(d), in pertinent part, provides:

> An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, or extended, or otherwise modified upon a showing of substantial and material change in circumstances.

Thus, the courts retain authority during the period of rehabilitation to modify the award as changing circumstances may require. *See Self v. Self,* 861 S.W.2d at 363; *Loria v. Loria,* 952 S.W.2d at 838; *see also Wiseman v. Wiseman,* No. 03A01-9612-CV-00392, 1997 WL 418495 at *2 (Tenn. App., July 28, 1997) (Tenn. R. App. P. 11 application denied); *Sommerville v. Sommerville,* No. 01-A-01-9502-CV-00070, 1995 WL 498943 at * 1 (Tenn. App., August 23, 1995) (no Tenn. R. App. P. 11 application filed).

Because support decisions are factually driven and involve considering and balancing numerous factors, we give wide latitude to the trial court's

discretion. *See Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. App. 1989). We review a trial court's decision according to the familiar Tenn. R. App. P. 13 (d) standard, and we will uphold the trial court's decision unless it is based on an improper application of the law or is against the preponderance of the evidence. *See id.*; *Luna v. Luna*, 718 S.W.2d 673, 675 (Tenn. App. 1986). Ordinarily our review is *de novo* with a presumption that the trial court's factual findings are correct. See Tenn. R. App. P. 13 (d). However, the trial court's failure to make findings of fact leaves nothing to which the presumption of correctness can attach. Accordingly, in this case, our review is *de novo* without a presumption of correctness. *See Goodman v. Memphis Park Comm'n*, 851 S.W.2d 165, 166 (Tenn. App. 1992); *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. App. 1984).

By statute, increases, decreases, terminations, extensions or other modifications of rehabilitative alimony may be granted only upon a showing of substantial and material change in circumstances.[4] *See* Tenn. Code Ann. §36-5-101(d); *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn.. App. 1993); *Cranford*, 772 S.W.2d at 50. In order to be material, a change in circumstances must have been unforeseeable at the time of the decree. *See McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. App. 1991). The party seeking the modification bears the burden of proving the

---

[4]The wording of this statutory requirement is the same as that required for a modification of alimony *in futuro*. Tenn. Code Ann. §36-5-101(a)(1) (Supp.1998). Thus, cases regarding substantial and material change of circumstances have some applicability in requests for modification of rehabilitative support. Because, however, the two types of support differ in their purposes, a different analysis may be required as to some issues.

modification is warranted.[5]  *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. App.1993).

Because support can be ordered in the first place only where one spouse is economically disadvantaged relative to the other spouse,  Tenn. Code Ann. § 36-5-101(d)(1), the material change of circumstances analysis should include, at a minimum, consideration of whether there has been significant change in the economic disparity between the parties.

The only evidence in the record relevant to the parties' economic situations is the following: Wife's income from employment was $21,750 at the time of the divorce and was $23,400 at the time of the hearing on modification, but her current employment did not provide benefits such as health insurance. It is unclear from the record whether the effect of the lack of benefits was, in actuality, a net reduction in salary.[6]  In any event, a modest increase in salary cannot be said to be unanticipated at the time of the divorce.  *See Norvell v. Norvell*, 805 S.W.2d 772, 775 (Tenn. App. 1990).  Further, even in alimony *in futuro* situations, a recipient's increased income alone is not sufficient to warrant reducing or terminating support.  *See McCarty*, 863 S.W.2d at 720; *Norvell, 805 S.W.2d* at 775.  Husband's salary has remained approximately $60,000.  Thus, there remains a significant disparity between the incomes earned by the parties. Wife is still economically disadvantaged relative to Husband. Of course, the basis for Husband's request for termination is not a change in the incomes of either of the parties; it is his assertions regarding the impact of Wife's

---

[5]In section II of this opinion, we have determined that the burden-shifting presumption arising from cohabitation, by virtue of Tenn. Code Ann. § 36-5-101(a)(3), does not apply to this award of rehabilitative alimony.

[6]Wife's expenses at the time of hearing included payment for health insurance coverage under COBRA.

-10-

cohabitation.

In *Isbell v. Isbell*, 816 S.W.2d at 735, the Supreme Court rejected the argument that remarriage is by its nature rehabilitative and held that remarriage itself did not warrant termination of rehabilitative alimony, stating, "The presumption that the state of marriage in and of itself meets the economic needs of the female, or indeed of either spouse, is an antiquated presumption that may not be indulged in modern society," *Isbell*, 816 S.W.2d at 739. Similarly, in *Gregory v. Gregory*, No. 03A01-9503-CH-00093, 1995 WL 447786 (Tenn. App. July 31, 1995) (no Tenn.R.App.P. 11 application filed), this court held that remarriage does not constitute a change of circumstances sufficient to warrant termination of rehabilitative alimony. Based on the reasoning of these holdings, we are of the opinion that cohabitation, in and of itself, does not constitute a change of circumstance sufficient to trigger a review of an award of rehabilitative support. The critical factor is not the cohabitation itself, but the economic impact on the recipient former spouse of any financial contribution from the cohabitee.

With regard to the economic effects of Wife's relationship with another man, the record is scanty. The fact that the couple share a joint bank account does not prove that Wife has benefitted financially from that arrangement. Similarly, although the record shows that the residence was jointly purchased in March of 1997, for approximately $140,000, as tenants in common with the right of survivorship, joint ownership of the residence does not establish that wife enjoys economic benefit. The couple paid monthly installments of $1300 on the residence, and Wife's income and expense statement reflects a monthly expense of $690 for the mortgage. According to Wife's income and expense statement,

her income (including the rehabilitative support) exceeds her expenses by only $65 per month. We have no information regarding Wife's monthly expenses at the time of the divorce; therefore, the record does not show a substantial decrease in her expenses. Further, the record contains no information regarding other financial assets (other than the condominiums discussed separately below) or the distribution of assets such as pension funds at the time of the divorce.

IV.

Husband's primary point involves Wife's ownership and renting out of two condominiums. Husband claims that because Wife is able to live in the residence she co-owns, she is "free to invest in and rent out at least two other properties and to benefit from their increase in equity." In this argument, Husband asserts that the economic benefits Wife enjoys from living with someone else allow her to improve her overall economic situation through accumulation of assets (the equity).

The record does not fully reflect all the circumstances surrounding Wife's acquisition of these properties. However, Husband quitclaimed his interest in one condominium to Wife at the time of their divorce, and the quitclaim deed includes an affidavit that the deed was executed and delivered in accordance with the Parties' Marital Dissolution Agreement and Final Decree of Divorce.[7] An increase in the value of assets acquired in a division of marital property is foreseeable and, therefore, does not constitute a substantial and material change

---

[7]Husband's argument also implies that Wife would be living in this condominium if she had not co-purchased the house where she currently resides. Neither the record nor Husband's argument addresses the mortgage payments Wife would have made on the condominium, i.e., whether those payments would have been greater or less than the amount she currently pays toward the house. Husband does acknowledge that mortgage payments are still due on the condominium as Wife rents it for an amount sufficient to cover those payments.

of circumstances. *See Norvell*, 805 S.W.2d at 775. The record includes a quitclaim deed from a previous co-owner (with Wife) of another condominium dated June 30, 1995, but contains no further information about Wife's acquisition of partial and then total ownership interest in this property.

An unforeseeable substantial change of circumstances justifying modification of a support award has often, in the context of alimony *in futuro*, been interpreted to require a change in the recipient's need or the payor's ability to pay, or both. *See Bowman v. Bowman*, 863 S.W.2d 563, 568 (Tenn. App. 1991). Those principles have applicability to rehabilitative alimony; however, the concept of "need" in this situation must be analyzed with reference to the purposes and goals of rehabilitative alimony, which differ from those of alimony *in futuro*.

> The concept of rehabilitation in ordinary usage involves the process of restoring an individual . . . to a useful and constructive place in society through some form of vocational . . . retraining or through relief, financial aid, or other reconstructive measure." Webster's Third New International Dictionary 1949 (1961). In legal parlance and in connection with alimony, rehabilitation "contemplates sums necessary to assist a divorced person in regaining a useful and constructive role in society through vocational or therapeutic training or retraining and for the further purpose of preventing financial hardship on society or individual during the rehabilitative process." Black's Law Dictionary 1157 (5th ed. 1979). Both definitions contemplate the enhancement of an individual's capacity to function independently and with economic security in society. Likewise, the statute in question expresses the General Assembly's intent that the economically disadvantaged spouse be rehabilitated whenever possible and provides guidelines for the court to consider when "determining the nature, amount, length of term, and manner of payment." The concept of rehabilitation in the statute is the improvement of one's present and future capacity to function independently in society.

*Isbell,* 816 S.W.2d at 738-38 (quoting from *Gerlach v. Gerlach*, 1988 WL 102744 at *3 (Tenn. App. October 6, 1988). Rehabilitative alimony has also been described as providing "a temporary income during a period of adjustment and effort of the dependent spouse to become partially or totally self-sufficient." *Loria,* 952 S.W.2d at 838.

A gradual improvement in the recipient's economic situation during the adjustment period is not only foreseeable, it is the expectation and the goal of rehabilitative alimony. The concept of a change in the recipient's "need" in the context of rehabilitative alimony must be viewed from that perspective. Husband has alleged some non-defined increase in Wife's financial condition by her accumulation of equity in the two rental properties. However, he has failed to establish that this equity interest has rendered Wife economically self-sufficient.[8] Since the equity accumulation indicates a gradual and incremental improvement in Wife's financial condition, it cannot be said to have been unforeseeable at the time Husband executed the Marital Dissolution Agreement. Changes in circumstances are not material if the parties contemplated them when entering into an agreement regarding support. *See Givler v. Givler*, 964 S.W.2d at 902, 906 (Tenn. App. 1997). An attempt by the obligor to shorten the period of rehabilitation will not be successful where an incremental improvement in financial condition is all that is shown or alleged.

Therefore, we find that Husband has failed to establish a material change of circumstance since the entry of the final divorce decree which would warrant

---

[8] Husband objects to Wife's accumulation of assets, when, in fact, a continuing increase in her assets is the very event which could make her more self-sufficient and reduce the possibility of his 10-year obligation being converted to a permanent *in futuro* obligation at the end of the rehabilitation period. *See Loria,* 959 S.W.2d at 838.

consideration of termination of the rehabilitative support he agreed to pay.

V.

In addition to asserting that the benefit accruing to Wife from the increasing equity in the two condominiums obviates her need for continued support, Husband alternatively argues that such investment in rental property does not constitute sufficient rehabilitative efforts on Wife's part to justify continuation of rehabilitative alimony.[9] Husband asserts that Wife's only rehabilitative efforts were the purchase of a computer and some computer manuals, which were insufficient to meet the statutory requirement of reasonableness. Wife asserts her successful re-employment efforts and her real estate investments are reasonable rehabilitative efforts.

Tenn. Code Ann. § 36-5-101(d)(2) requires recipients of rehabilitative alimony to make "reasonable" efforts at rehabilitation. "If a dependent spouse does not satisfactorily strive for self-sufficiency, the Court may withdraw part or all of the support allocated to finance rehabilitation." *Loria*, 952 S.W.2d at 838. On the other hand, if the dependent spouse achieves partial self-sufficiency, but demonstrates an inability to be totally self supporting, courts may grant alimony *in futuro* to supplement the spouse's earning capacity. *See id*.

Some grants of rehabilitative alimony have been based upon specific rehabilitative goals, e.g., obtaining a college education. However, the statute itself does not limit rehabilitative measures to education and training, and there is nothing in the record to indicate such a specific purpose in this case. In the

---

[9]Husband's earlier argument that Wife has improved her financial condition to the point she no longer needs support obviously creates problems for his argument that Wife must prove that her rehabilitative efforts have been unsuccessful.

situation of Wife herein, who was 57 years old at the time of divorce and had been employed for 35 years, it would not have been realistic to expect her to obtain training or education in a new field, launch a new career, and attain enough success in it to enable her to prepare financially for her retirement if she could hope to retire around the customary age.

While working at the job she had at the time of the divorce, Wife attempted to increase her earnings by working toward advancement. In fact, her salary was increased from $21,750 to $24,300 in her position at that company. However, Wife lost her job when that company closed, a setback unanticipated by either party. During her unemployment, Wife purchased the computer and manuals to upgrade her skills so that she could find another job. She also sent out resumes at the rate of 10 to 15 per week for seven months. She briefly tried working in a retail store, but her health problems made continuation impossible. She succeeded in obtaining a new position, at a salary slightly higher than the salary she was earning at the time of the divorce. There is nothing in the record to indicate that Wife is capable of finding suitable employment at a significantly greater salary, although she continues to look for opportunities with better economic prospects.

Based upon Wife's situation, her efforts to upgrade her skills to allow her to advance monetarily in the occupation where she had 35 years of experience, as well as her efforts to find another job after her employer closed, were unquestionably reasonable. To expect her to completely retrain for a new occupation would, in our opinion, be unreasonable. Since the purpose of rehabilitative alimony is "the improvement of one's present and future capacity to function independently," the gradual improvement of Wife's financial

condition through real estate or other investments is also reasonable. In any event, we think Wife herein has made efforts which were reasonable in her situation; however, she continues to need the rehabilitative support ordered by the court and agreed to by Husband. *See Wiseman*, 1997 WL 418495 at *2.

Because Wife proved that she made reasonable efforts at rehabilitation but continues to require the additional support contemplated by the parties' Marital Dissolution Agreement, we need not reach Husband's argument that Tenn. Code Ann. § 36-5-101(d)(2) required Wife to bear the burden of proving that she made sufficient efforts to rehabilitate herself. *See Wiseman v. Wiseman*, 1997 WL 418495 at *4.

VI.

In summary, the record shows that Wife was and is at an economic disadvantage when compared with Husband. He clearly has a much greater earning capacity. Notwithstanding her chronic health problems, Wife has made a concerted effort to remain employed and to upgrade her skills. She bought a computer and instruction books, sent out numerous resumes during her period of joblessness, and managed to obtain employment at a higher rate of compensation than she enjoyed at the time of the parties' divorce. However, this job provides no health benefits, a problem for an employee with Wife's medical history. While she continues to seek employment with greater opportunity, her age, long employment history, lack of advanced education, and medical problems pose obstacles to dramatic career changes. Meanwhile, she has invested in real estate and is gradually accumulating increased equity in those properties. All these facts convince us that the trial court did not abuse its discretion in declining to modify the rehabilitative alimony. *Ingram v. Ingram*

721 S.W.2d 262, 264 (Tenn. App. 1986) (trial courts possess considerable latitude in making alimony decisions, and this court is disinclined to interfere unless the facts require it.).

Accordingly, the trial court's denial of Husband's petition for modification of spousal support is affirmed. This case is remanded to the trial court for such further proceedings as may arise. Costs are taxed to Tommy Eugene Stockman for which execution may issue if necessary.


_____
PATRICIA J. COTTRELL,  JUDGE


**CONCUR:**

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.


_____
WILLIAM B. CAIN, JUDGE