**Clifford Harry NORVELL,**
**Plaintiff/Appellee,**

v.

**Dorothy Delores NORVELL,**
**Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 10, 1990.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 19, 1991.

Marshall L. Gerber, Memphis, for defendant/appellant.

James D. Causey, Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge (Western Section).

This is a domestic relations case dealing with the reduction and subsequent elimination of alimony *in futuro* by the trial court. Dorothy D. Norvell ("Wife") was granted a divorce from Clifford Harry Norvell ("Husband") in the Circuit Court of Shelby County in 1977. The final decree provided for payment of alimony *in futuro* in the amount of $1,150 per month to Wife by Husband until Wife should remarry. In

September, 1983, as a result of a petition to modify filed by Husband, the trial court temporarily reduced the alimony from $1,150 to $850 per month. The reduction was to continue until such time as Husband obtained employment with income sufficient to pay the original amount awarded to Wife.

In March, 1986, Wife filed a petition for contempt. While Husband was found not to be in contempt, the court ordered him to pay the alimony then in arrears. The court further ordered that thereafter Husband was to pay into escrow by December of each year alimony for the following year in a lump sum.

In February, 1989, Wife again filed a petition for contempt. She alleged that Husband had not paid alimony to the escrow agent for the year 1989 by December, 1988, as the earlier order provided. Husband countered with a petition to terminate alimony due to a change in circumstances. This action by Husband is the basis for this litigation.

Following a hearing in May, 1990, in which the court heard testimony from Husband and Wife, the trial court reduced the alimony *in futuro* payments to $400 per month retroactive to January 1, 1990, and further provided that all alimony payments were to terminate as of December 31, 1990. The sole issue presented for our consideration is whether or not the trial court erred in so ruling. We hold that he did err and reverse.

The record reflects that in the original divorce proceedings Wife was awarded Husband's interest in the marital residence, subject to the mortgage which was to be paid out of monthly alimony awarded to her. Wife was also awarded a condominium in Arkansas, encumbered by a mortgage, a cottage on the Spring River in Hardy, Arkansas, and the household furnishings.

 T.C.A. § 36–5–101(a)(1) provides in part that following an order by the court decreeing support and maintenance of one spouse by another, "on application of either party, the court may decree an increase or

decrease of such allowance only upon a showing of a substantial and material change of circumstances." In *Seal v. Seal*, 726 S.W.2d 934 (Tenn.App.1986), this Court held that "the changes sought to be relied upon to effectuate a modification of alimony payments must be shown to have occurred *since* the entry of the decree ordering the payment of alimony." *Id.* at 935. In addition, the party seeking a modification in alimony has the burden to show such change in circumstances to warrant a modification of the prior decree. *Azbill v. Azbill*, 661 S.W.2d 682 (Tenn.App.1983).

■ The factors set forth in T.C.A. § 36–5–101 applicable to the initial grant of support and maintenance where relevant must be taken into consideration when arriving at a determination of whether there has been a change in circumstances to require a modification of support and maintenance. *Threadgill v. Threadgill*, 740 S.W.2d 419, 422 (Tenn.App.1987).

At the hearing below, Husband testified that he had taxable income in 1988 of $58,000 plus $9,600 in non-taxable income. His tax return for 1989 had not been filed. No insistence was made in the trial court nor was it presented to this Court that Husband was contending an inability to pay. Rather, he based his case upon the alleged improved financial condition of Wife, coupled with the contention that he had been paying alimony for thirteen years, and that was long enough.

Husband presented proof to the effect that in 1989, while working as a sales clerk, Wife earned $7,877. He also presented evidence to the effect that in November, 1988, Wife sold the marital home for a net of $192,562 and that shortly thereafter she bought a condominium in Basalt, Colorado, for $110,000. He also presented evidence to the effect that she bought a new Toyota automobile in August, 1989, for $12,000. Husband further testified that a two-bedroom cabin in Hardy, Arkansas, which Wife also obtained in 1977, was now worth some $100,000. Husband conceded, however, that he had not seen the property in eighteen years and this estimate was "off

the top of his head." This was the extent of Husband's proof.

Mrs. Norvell testified that she sold the Memphis home and moved to Colorado to be near her son and two grandchildren, who live near Aspen. She stated that the sales price of the residence was approximately $225,000. However, she used some of the proceeds to pay off a $30,000 mortgage that she had taken out in order to have necessary repairs done to the house and to pay a substantial number of bills.

She readily admitted purchasing the Toyota station-wagon in 1989 to replace her personal car, which was then sixteen years old. She stated she had moving costs to Colorado of $10,000 and medical bills in 1989 of $5,000.

Mrs. Norvell testified to having health problems. Her testimony was not contradicted. She stated that she was earning $356 every two weeks working part-time three days a week as a sales clerk in a store in Aspen. Because the seasonal nature of Aspen did not require her to work in May, June and October, during those months she returned to her cabin in Arkansas.

While unable to place a current value on the Hardy cabin, Wife strongly disputed that it was worth $100,000. She testified that it was purchased for $13,000 in 1960, and the only maintenance of any substance was done in 1989 when she spent $4,000 to put in a new beam, a new roof, and a new deck. In addition to her work-related earnings, she testified that in 1989 she earned $4,000 from investments.

■ If there are to be any "changed circumstances" regarding alimony, such changed circumstances must be with reference to Wife. At the time of the divorce Wife was not employed. We cannot discern from the record whether at the time of the first hearing in 1986 she was employed. At the time of the second hearing in April, 1990, Wife was earning approximately $712 per month. This fact alone would not warrant a reduction in Husband's alimony obligation. *See Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn.App. 1987) (periodic alimony not reduced while

wife was unemployed at the time of alimony award and was making $19,000 per year at the time of hearing for modification of alimony); *Dodd v. Dodd*, 737 S.W.2d 286 (Tenn.App.1987) (periodic alimony not reduced while wife completed her training as a registered nurse and was employed); *Jones v. Jones*, 784 S.W.2d 349 (Tenn.App. 1989); *Sumner v. Sumner*, 11 TAM 30–20, 1986 WL 6613 (Tenn.App.E.S. June 13, 1986); *Wright v. Wright*, 15 TAM 30–14, 1990 WL 84032 (Tenn.App.M.S. June 22, 1990).

Husband introduced no proof to show that at the time the original divorce decree was entered it was unanticipated or unforeseen that Wife would become gainfully employed. To the contrary, it appears that employment of Wife was most certainly anticipated, inasmuch as the original decree placed upon her the obligation of paying two mortgages.

Husband also contends that Wife's income from investments made subsequent to the divorce and the cash sale of the marital home should also be considered as a "material change of circumstances" so as to warrant a modification of the alimony award. The marital home was obviously large enough to accommodate two adults and at least two children during the marriage. Wife testified that at the time of the divorce she was sixty years of age and had no family living in Memphis. It is clear from the record that she sold a more expensive home and bought a less expensive condominium in Colorado to be near one of her children and grandchildren. This is a reasonable and logical move for a person her age living alone. The fact that she moved to Aspen, Colorado, (considered by many to be an expensive area in which to live) in order to be with her family does not detract from this action.

■ After paying bills, cost of moving, new car, etc., Wife was able to invest over $50,000 in a certificate of deposit. Any income produced from the proceeds of the sale of the parties' marital home awarded to a spouse in the division of marital property should not be a factor in determining whether or not a change of circumstances existed to warrant a modification of periodic alimony payments. *See Claiborne v. Claiborne*, 13 TAM 10–20, 1988 WL 5684 (Tenn.App.E.S. January 29, 1988); *Seal v. Seal*, 802 S.W.2d 617 (Tenn.App.W.S.1990).

■ The record reflects that in modifying the divorce decree relative to alimony *in futuro* the Court made three observations, none of which we deem to be relevant. First, the Court was a bit perturbed about the disparity in the valuation of the cabin in Hardy, Arkansas, as expressed by the parties. As we have already noted, this cabin was awarded to Wife as marital property in 1977; thus it was "within the contemplation of the parties" at the time of the divorce. Husband's "valuation" of $100,000 was based upon a lack of observation for eighteen years and admittedly was "off the top of his head." Even assuming that there had been an increase in value over the years, the increased value of marital assets received in a divorce decree is not to be considered as a factor constituting a substantial material change in circumstances to support an alimony award reduction. Lastly, the Court observed that "[w]e've been told by the General Assembly in the last few years that alimony is rehabilitative." This is not a completely accurate recitation of current law. Of more importance, the provisions relative to rehabilitative alimony are in no way applicable to pre–1983 decrees.

Wife testified also without contradiction that she had monthly expenses of $1,500 to $1,800. In *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn.App.1984), now-Presiding Judge Todd stated:

> § 36–5–101 requires that an amount of income be ascertained which will provide for the wife to live in the manner to which she became accustomed during the marriage. From this amount should be subtracted her reasonably anticipated income from her own endeavors and from her property.... The result of the subtraction will be the amount by which the Husband is obligated to supplement the income of his wife to the extent of his ability....

*Id.* at 572. There is no evidence in this record to indicate that as a result of continuing to receive alimony at the reduced amount of $850 a month Wife will be able to enjoy a higher standard of living as a divorced person than she did when married to Husband.

■ In our opinion, Husband failed by a wide margin to carry the burden of proof thrust upon him by our case law. The trial court abused its discretion in reducing and ultimately eliminating alimony payments. Factors constituting changed circumstances may develop in the future, but they have not as yet developed as presented by the proof in this record.

Accordingly, the judgment of the trial court is reversed. The Husband's obligation to pay alimony *in futuro* to Wife is reinstated at $850 per month, retroactive to January, 1990. This opinion in no way modifies any of the provisions of the decree entered in March, 1986. The obligation of Husband to pay this monthly alimony shall continue until further orders of the court pursuant to existing law.

■ In addition, Wife's counsel has sought attorney fees for services rendered in this Court on her behalf. Under the circumstances, this Court is of the opinion that such request is reasonable, and attorney fees for services rendered on appeal are hereby awarded. Upon remand to the Circuit Court of Shelby County, the trial court shall determine the reasonable amount of such attorney fees along with any related expenses incurred in connection with the appeal. Costs on appeal are taxed to Husband, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.