629 So.2d 1312 (1993)
Dorothy Delores NORVELL
v.
Clifford Harry NORVELL.
No. 93-CA-0962.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
*1313 Pat M. Franz, Metairie, for Dorothy Delores Norvell.
Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for Clifford Harry Norvell.
Before BYRNES, WARD and PLOTKIN, JJ.
WARD, Judge.
The parties in this domestic relations matter are former spouses who were living in Tennessee at the time of their divorce. The history of the proceedings in that state are reported in Norvell v. Norvell, 805 S.W.2d 772, 773 (Tenn.App.1990), appeal denied (Tenn.1991):

*1314 Dorothy D. Norvell ("Wife") was granted a divorce from Clifford Harry Norvell ("Husband") in the Circuit Court of Shelby County in 1977. The final decree provided for payment of alimony in futuro in the amount of $1,150 per month to Wife by Husband until Wife should remarry. In September, 1983, as a result of a petition to modify filed by Husband, the trial court temporarily reduced the alimony from $1,150 to $850 per month. The reduction was to continue until such time as Husband obtained employment with income sufficient to pay the original amount awarded to Wife.
In March 1986, Wife filed a petition for contempt. While Husband was found not to be in contempt, the court ordered him to pay the alimony then in arrears. The court further ordered that thereafter Husband was to pay into escrow by December of each year alimony for the following year in a lump sum.
In February, 1989, Wife again filed a petition for contempt. She alleged that Husband had not paid alimony to the escrow agent for the year 1989 by December 1988, as the earlier order provided. Husband countered with a petition to terminate alimony due to a change in circumstances. This action by Husband is the basis for this litigation.
Following a hearing in May 1990, in which the court heard testimony from Husband and Wife, the trial court reduced the alimony in futuro payments to $400 per month retroactive to January 1, 1990, and further provided that all alimony payments were to terminate as of December 31, 1990.
The judgment reducing, then terminating, the alimony award was reversed by the Tennessee appellate court. The court reinstated the obligation of Mr. Norvell, appellant in this matter, to pay $850 per month in alimony, retroactive to January, 1990. The court further stated that none of the provisions of the decree entered in March, 1986 were modified in any way. Norvell, 805 S.W.2d at 776.
After the Tennessee appellate court rendered its decision, and an application for permission to appeal to the Tennessee Supreme Court was denied on February 19, 1991, Mrs. Norvell filed a petition in the Tennessee trial court to place the defendant-husband in contempt and to appoint an escrow agent. On May 20, 1991 the court issued a judgment finding the defendant to be in contempt for failing to abide by the orders of the Court. The court further awarded a judgment against the defendant for arrearages in the amount of $5,400.00 for support payments for the year 1990, and $10,200.00 for the amount due in December 1990 for the 1991 alimony payments, for a total judgment in the amount of $15,600.00, "together with pre-judgment interest at the rate of 10% per annum from the date each alimony payment was due and post-judgment interest at the rate of 10% per annum" from the date of the order. It is the provision for pre-judgment interest which is at issue in this appeal.
The litigation in Louisiana commenced when the plaintiff, Mrs. Norvell, filed an ex parte petition to make the May 21, 1991 Tennessee judgment executory, Mr. Norvell being a resident of New Orleans. The trial court ordered on July 22, 1991 that the Tennessee judgment be made executory. The plaintiff then proceeded with enforcement of the judgment through a writ of fieri facias and garnishment proceedings against accounts owned by the defendant. The defendant responded by filing a motion to stay execution of the Tennessee judgment, alleging lack of notice. This motion was filed on August 21, 1991, and on August 26, 1991 the trial court granted the stay upon the defendant posting security.[1] On June 3, 1992, upon motion of the plaintiff, the trial court granted a partial release of a garnished account for the purpose of payment of a check *1315 for the principal amount of the alimony arrearages.
The parties were apparently unable to come to an agreement on the amount of interest due, and on July 15, 1992 the trial court held a hearing to determine the amount due. The plaintiff maintained that interest must be calculated on the 1990 arrearage of $5400 from the date of December 31, 1989 and on the 1991 arrearage of $10,200 from the date of December 31, 1990. December 31, 1989 and 1990 were the dates the defendant was required to pay an escrow agent the full year's alimony. The defendant maintained that the interest should be calculated on the 1990 alimony only from the date the Tennessee appellate court decision became final and on the 1991 alimony from the date each monthly installment became due.
The defendant further maintained that former counsel for the defendant and counsel for plaintiff had reached an agreement in August 1991 that no interest would accrue on the arrearages while the issue of jurisdiction over the plaintiff, for purposes of the rule to reduce alimony, was litigated.
On October 29, 1992 the trial court rendered a written judgment setting forth the amount of interest due on the alimony arrearage. The judgment states that "interest on the Tennessee money judgment ... shall run as set forth in said judgment at the rate of ten (10%) percent per annum, commencing December 31, 1989 on the $5,400 principal which was due in December 1989, and commencing December 31, 1990 on the $10,200.00 principal which was due in December 1990." The trial court further ordered that accrual of interest shall be suspended during the period from September 16, 1991 through April 15, 1992. The interest was then calculated to be $1,026.00 on the $5,400.00 arrearage and $918.00 for the $10,200.00 arrearage, for a total interest due of $1,944.00.
The defendant timely moved for a new trial, which was denied on January 25, 1993 without a hearing. The defendant now appeals from the October 29, 1992 judgment ordering interest back to December 31, 1989 and December 31, 1990 and from the denial of the motion for new trial. The plaintiff has answered the appeal and argues that the trial court erred in suspending the accrual of interest during the period from September 16, 1991 through April 15, 1992.

ACCRUAL OF INTEREST
The first issue for this Court to determine is whether the plaintiff is entitled to pre-judgment interest. The Tennessee judgment ordered that she receive pre-judgment interest at the rate of 10 percent per annum. The appellant argues that, despite this clear language in the Tennessee judgment for arrearages, he should not be responsible for interest prior to the date the Tennessee Supreme Court denied writs from the ruling of the Tennessee appellate court because, prior to that time, there was an existing judgment relieving him from the duty to pay $850.00 per month alimony.
The appellant's position is insupportable. Tennessee courts hold that an appellate court decision modifying or reversing a trial court decision is given retroactive effect to the day of the original judgment, and interest on the award as modified runs from the same date as if no appeal had been taken, whether or not the appellate court reduced or increased the original award. Gotten v. Gotten, 748 S.W.2d 430 (Tenn.App. 1987). See also Ballard v. Ballard, 224 Tenn. 390, 455 S.W.2d 592 (1970) and American Buildings Company v. DBH Attachments, Inc., 676 S.W.2d 558 (Tenn.App. 1984).[2]
The Tennessee judgment at issue in this case awarded the plaintiff pre-judgment interest "from the date each alimony payment was due." Pre-judgment interest may be awarded by a court or jury in Tennessee as an element of, or in the nature of damages pursuant to T.C.A. § 47-14-123.[3] Allowance *1316 of pre-judgment interest in Tennessee is governed by principles of equity. These principles are stated in Fox v. Fox, 1993 WL 328789 (Tenn.App.1993):
In determining whether to allow interest on an obligation, a persuasive consideration is the relative equities between the beneficiary of the obligation and the party upon whom interest is to be imposed. Performance Systems v. First Am. Nat'l Bank, 554 S.W.2d 616 (Tenn.1977). Thus, where there are reasons founded on a party's conduct, or other special circumstances existing in the case, and the justice of the situation requires it, interest will be denied. Jourolmon v. Ewing, 80 F. 604 (6th Cir.1897).
In Tennessee the allowance of interest on judgments is discretionary. Terminal Transport Co. v. Cliffside Co., 608 S.W.2d 850 (Tenn.App.1980). As noted in the statute quoted above [§ 47-14-123], the allowance of pre-judgment interest is governed by the principles of equity. One oft cited such principle is that "he who comes into equity must come with clean hands."
This maxim declares that a plaintiff who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction.... Under the operation of this maxim the [party seeking the assistance of the court] must show that the transaction from which his claim arises is fair and just, that there is nothing unconscientious in his conduct relative thereto, and that the relief he seeks is equitable, and not harsh or oppressive upon the [opposing party]....
Once found to exist, the doctrine of unclean hands repels the unclean [party] at the steps of the courthouse. And he is repelled entirely.... The Court will not partially enforce agreements that arise out of unconscionable or immoral conduct merely because a part of it appeared to be untainted. Wrongdoing by halves will not be condoned. Gibson's Suits in Chancery at § 18; Farmers & Merchants Bank v. Templeton, 646 S.W.2d 920 (Tenn.App. 1982); McCallie v. McCallie, 719 S.W.2d 150 (Tenn.App.1986).
Another applicable maxim of equity holds that "equity will undo what fraud has done." Under the principles of equity, fraud vitiates every transaction or obligation into which it intrudes, at the discretion of the injured party. Courts will, in addition to undoing what fraud has done, treat as having been done those acts which fraud prevented from occurring. Gibson's Suits in Chancery at § 24.
One other principle guiding courts in the doing of equity is that "no one can take advantage of his own wrong." "In vain should he seek the aid of Equity who has violated equity." Id at § 27.
Equity principles are relevant in this case because the Tennessee judgment makes references to different alimony payments: the payments due each month to the plaintiff and the in solido payments due on December 31st of each year to the escrow agent. The ultimate issue is whether the plaintiff is entitled to interest on the entire in solido payments even though she would not receive them in that form but rather would receive a 1/12th portion each month from the escrow agent. Appellant argues that, in essence, the plaintiff should not be afforded interest on money before it was due her especially in light of the fact that the defendant had no legal obligation to pay alimony once the trial court had ruled in his favor. The appellee on the other hand suggests that the defendant's obligation was to pay alimony in a lump sum each year; under this obligation he was not *1317 entitled to the use of the money. The appellee argues that the defendant was able to retain use of these funds and earn interest upon them pending the appeal in Tennessee; therefore, he in essence will not be caused a loss or harm if he is compelled to pay that same interest to the plaintiff.
The record in this case does not indicate that either of these parties has unclean hands or that there has been any fraud.[4] The appellant successfully petitioned the Tennessee trial court for an alimony reduction; the trial court's judgment in his favor was ultimately found to be erroneous. The defendant was required to pay, and has apparently paid, the plaintiff's attorney's fees of $8,000 in the Tennessee action. The appellant paid the reduced amount of the alimony as it became due pursuant to the Tennessee trial court judgment.
There are no cases in Tennessee or Louisiana which directly address the issue before this Court. However, in Price v. Price, 225 Tenn. 539, 472 S.W.2d 732 (1971), the Tennessee Supreme Court was required to determine if interest was due to a wife who had been awarded alimony in solido. The judgment directed that the decree for alimony in solido be secured by a lien on a note payable to the husband and that payments upon the alimony judgment be paid in equal installments as the note payments were made plus one-half the accrued interest payments upon the note. The wife subsequently contended that the judgment's reference to accrued interest payments meant that she should receive interest on the alimony judgment and that the accrued interest payments should not be credited against the in solido alimony award. In rejecting the wife's position, the Court stated:
On this date [the date the judgment for alimony was rendered] appellant became a creditor and the appellee a debtor, but what is fatal to appellant's claim for interest beginning on this date is that on this date she was not entitled to the use of any of the money represented by this judgment. The judgment is payable in installments and appellant only became entitled to the use of any part of the money represented by this judgment on the date the first installment was due....

Price v. Price, 225 Tenn. at 544, 472 S.W.2d at 734.
The Court in Price went on to note that in 33 A.L.R.2d 1455, under the heading "Right to Interest on Unpaid Alimony" most states which have addressed the issue of interest on judgments for alimony in gross have allowed interest from the date "payment was due under the judgment until payment was made, and, as to unpaid installments (sic), interest has been allowed from the date the particular instalment matured." Id. at 544-545, 472 S.W.2d 732.
Louisiana clearly follows the general rule that interest runs on alimony from the date each support payment becomes due. Miller v. Miller, 321 So.2d 318, 321 (La. 1975); Marshall v. Marshall, 390 So.2d 1365 (La.App. 4th Cir.1980), writ granted on other grounds 396 So.2d 1329 (La.1981); Morgan v. Morgan, 452 So.2d 255 (La.App. 5th Cir. 1984); Chaudoir v. Chaudoir, 430 So.2d 280 (La.App. 3rd Cir.1983).
Therefore, unless the terms of the Tennessee judgment clearly mandate that interest should run from the date each in solido payment was due to the escrow agent, the jurisprudence indicates that interest should accrue only from the date each payment was due to the plaintiff herself.
The Tennessee decree states judgment is rendered against the defendant "in the amount of $5,400.00 for his arrearage in the 1990 alimony payments and $10,200.00 for the payment which was due in December 1990 for the 1991 alimony payments, for a total of $15,600.00, together with pre-judgment interest at the rate of 10% per annum from the date each alimony payment was due and post-judgment interest at the rate of 10% per annum from the date of this Order." *1318 Appellee argues that the language awarding pre-judgment interest "from the date each alimony payment was due" refers to the "payment which was due in December 1990" and the amount of $5,400.00 arrearage for 1990. However, this construction of the language in the judgment is not persuasive. The Tennessee decree allows pre-judgment interest from the date each alimony payment was due; the term alimony payment is used earlier in the judgment to refer to the multiple payments due the wife in 1990 and 1991, i.e., the monthly support payments, not the in solido payments due an escrow agent. Furthermore, this reading of the judgment comports with the general rule that interest accrues on alimony as of the date each installment becomes due.
For these reasons, the judgment of the trial court insofar as it awarded interest from the date the in solido payments were due an escrow agent, i.e. December 31, 1989 and December 31, 1990, is reversed.
The remaining issue in this appeal is the assignment raised by appellee in her answer. She contends that the trial court erred in suspending the accrual of interest from September 16, 1991 to April 15, 1992. The trial court suspended the running of interest based on a factual finding that the counsel for the plaintiff, who was not the same attorney at the subsequent hearing to determine the amount of interest, and counsel for the defendant had agreed to hold all matters, including the running of interest, in abeyance. The record indicates that one reason for this agreement was to allow the plaintiff an opportunity to retain an attorney experienced in domestic litigation because the case had moved beyond mere enforcement of an out-of-state judgment to include the rule to reduce alimony and issues of personal jurisdiction.
The trial court in its oral reasons for judgment stated that there was an agreement between the counsel for the parties. Counsel for defendant also stated that such an agreement had existed. Appellee submitted an affidavit from her former counsel to the trial court, after the hearing to determine interest was held, in an attempt to rebut the existence of an agreement to suspend the accrual of interest. In this affidavit, counsel deposes that at no time was the specific question of suspending the accrual of interest discussed nor did he agree to the suspension of the accrual of interest. However, this affidavit does not rebut the trial court's finding, based on his own recollection of what occurred at a pre-trial conference, that both parties agreed to hold "all matters" in abeyance.
The trial court's finding that the agreement between appellee's former counsel and the appellant's counsel was understood to include suspending the running of interest is not clearly erroneous. It will not be disturbed by this Court.
Therefore, the judgment of the trial court is reversed in part and affirmed in part and remanded for entry of judgment in accordance with the views expressed herein.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] At the same time that he filed the motion for a stay, the defendant filed a motion to reduce alimony. The plaintiff filed exceptions of lack of personal jurisdiction and improper service of process. The trial court denied these exceptions, and writs were denied by this Court and the Louisiana Supreme Court. Norvell v. Norvell, unpub. (92-C-0060 La.App. 4th Cir. Jan. 27, 1992), writ den. 594 So.2d 1322 (La. 1992). According to the briefs filed in this appeal, a hearing on the motion to reduce has been held, but no judgment has been rendered.
[2] Louisiana provides that alimony and child support awards are retroactive to the date the petition therefor was filed, unless the court finds good cause for not making the award retroactive. La.R.S. 9:310. The same rule pertains if an appellate court modifies an award. Hogan v. Hogan, 549 So.2d 267 (La.1989).
[3] T.C.A. § 47-14-123 provides in full:

Pre-judgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, however, that with respect to contracts subject to § 47-14-103, the maximum effective rates of pre-judgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.
[4] In their briefs, both parties make references to the appellant's alleged failure (or non-failure) over the years to pay alimony, his financial circumstances as a retiree, and other matters not clearly before this Court at this time. The appellant further suggests that the plaintiff was improperly characterized as an elderly woman without substantial resources by the Tennessee appellate court, another issue not before this Court at this time.