IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 1998 Session

## ROGER EDWARD KENNEDY v. DELORES RAE ROSE KENNEDY

**Appeal from the Circuit Court for Davidson County**
**No. 92D-2061     Muriel Robinson, Judge**

_____

**No. M1997-00219-COA-R3-CV - Filed November 30, 2000**

_____

This appeal involves a man's efforts to use his voluntary early retirement as a basis for ending his spousal support obligation. Three years after the divorce, the man filed a petition in the Circuit Court for Davidson County seeking to end his responsibility to pay child support. His former wife responded by filing a petition seeking to hold him in contempt for failure to pay spousal support. Following a bench trial, the trial court dismissed the man's petition, held him in contempt, and entered a $3,106 judgment against him for back spousal support. On this appeal, the man asserts that the trial court erred by declining to relieve him of his alimony obligation because of his inability to pay and his former spouse's lack of need. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Robert L. Jackson and Robert Todd Jackson, Nashville, Tennessee, for the appellant, Roger Edward Kennedy.

Mary Frances Lyle, Nashville, Tennessee, for the appellee, Delores Rae Rose Kennedy.

### OPINION

Roger Edward Kennedy and Delores Rae Rose Kennedy were married on August 12, 1961. They raised two children together during their 33-year marriage. Throughout the marriage, Mr. Kennedy was employed by the United States Government as a property disposal specialist earning approximately $64,000 per year, and Ms. Kennedy was a homemaker. The parties' relationship unraveled when Mr. Kennedy had an affair with another woman.

In April 1994, the Circuit Court for Davidson County granted Ms. Kennedy a divorce based on Mr. Kennedy's adultery. As part of its division of the marital estate, the trial court awarded Ms.

Kennedy fifty percent of Mr. Kennedy's monthly federal retirement benefits. The trial judge also directed Mr. Kennedy to pay Ms. Kennedy long-term spousal support in graduated amounts. The order directed Mr. Kennedy to pay $367 per month until the closing of the sale of the marital home, then $868 per month until Ms. Kennedy was no longer eligible for COBRA insurance coverage, and then $1,000 per month until Ms. Kennedy's death or remarriage.

In January 1997, at the age of fifty-four, Mr. Kennedy voluntarily retired from his job with the federal government. He immediately stopped paying spousal support and, in February 1997, filed a petition in the trial court requesting the termination of his spousal support obligation because his retirement rendered him unable to continue making his support payments. Ms. Kennedy immediately responded with a petition to hold Mr. Kennedy in contempt for failing to make his February 1997 support payment. Following a hearing, the trial court entered an order on August 5, 1997, dismissing Mr. Kennedy's petition, holding him in contempt, and entering a $3,106 judgment against him for the spousal support arrearage. The trial court concluded that its 1994 disposition of Mr. Kennedy's federal retirement had been part of the division of marital property and, therefore, that it was not relevant to his continued obligation to pay spousal support.

## I.
### MR. KENNEDY'S SPOUSAL SUPPORT OBLIGATION

Mr. Kennedy contends that his retirement renders him unable to pay spousal support and that Ms. Kennedy's portion of the retirement benefits will make up for any loss in spousal support. He argues that his retirement is a substantial, material change in circumstances that justifies terminating his support obligation. We disagree for two reasons. First, Mr. Kennedy's eventual retirement from his government job was foreseeable when the original divorce decree was entered in 1994 and was, in fact, addressed in the divorce decree itself. Second, Mr. Kennedy's retirement was voluntary.

A court cannot modify a spousal support award unless there has been a substantial, material change in circumstances since the entry of the previous support decree. Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000); *Brewer v. Brewer*, 869 S.W.2d 928, 934 (Tenn. Ct. App. 1993); *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). In order to be material, a change in circumstances must have been unforeseeable at the time the decree was entered. *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 91 (Tenn. Ct. App. 1991). It must also affect the obligor spouse's ability to pay or the obligee spouse's continuing need for support. *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

The party seeking the modification bears the burden of proving there has been a substantial, material change in circumstances. *Elliot v. Elliot*, 825 S.W.2d at 90; *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990). Once the party meets its burden, the trial court then utilizes the same factors in Tenn. Code Ann. § 36-5-101(d) (Supp. 2000) that were considered in making the initial award. *Brewer v. Brewer*, 869 S.W.2d at 936; *Norvell v. Norvell*, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990). While Tenn. Code Ann. § 36-5-101(d) allows the court to consider many factors, the real need of the obligee spouse is the single most important factor, *Cranford v. Cranford*, 772

S.W.2d at 50; *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984), with the obligor spouse's ability to pay another critical consideration. *Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995).

We give wide latitude to a trial court's decision regarding spousal support because it is factually driven and involves considering and balancing numerous factors. Accordingly, we review the decision pursuant to the familiar Tenn. R. App. P. 13(d) standard, and we will uphold the trial court's decision unless it is based on an improper application of the law or is against the preponderance of the evidence. *Cranford v. Cranford*, 772 S.W.2d at 50.

We agree with the trial court's conclusion that Mr. Kennedy's retirement was not a substantial, material change in circumstances. Retirement is not an unforeseeable event, but rather is one that is planned and anticipated far in advance. *Horn v. Horn*, No. 02A01-9401-CH-00011, 1995 WL 290475, at *2 (Tenn. Ct. App. May 15, 1995) (No Tenn. R. App. P. 11 application filed). There was also testimony showing that Mr. Kennedy had planned for some time to take early retirement and that he had discussed it with Ms. Kennedy prior to the divorce.

The fact that the division of Mr. Kennedy's pension benefits occurred earlier than expected has no bearing on his spousal support obligation. It is only after the trial court equitably divides the marital property that the issue of support or maintenance can properly be considered. Tenn. Code Ann. § 36-4-121(a)(1) (Supp. 2000). When the trial court contemplates whether to award spousal support, the division of property is one of the factors it weighs when dividing the marital estate. Tenn. Code Ann. § 36-5-101(d)(1)(H). It is clear from the terms of the divorce decree that the trial court anticipated Mr. Kennedy's retirement. The court first awarded fifty percent of the retirement benefits to Ms. Kennedy as marital property and then ordered graduated spousal support in order to cover Ms. Kennedy's expected expenses such as health insurance. The distribution of the pension benefits was merely a liquidation of each party's share of a marital asset.

Mr. Kennedy continues to be able to pay support, and Ms. Kennedy clearly needs the support in order to maintain even a modest lifestyle. Mr. Kennedy voluntarily retired from his $64,000-per-year government job and then voluntarily remarried and assumed the financial obligations of his new wife. Although he lives with his wife in a new three-bedroom home that is titled in her name only, he pays $961 of her $1200 mortgage payment and has continued to do so after his retirement – an amount that is almost equal to his $1,000 alimony obligation. He also pays for the utilities, cable, trash pick-up, and has money for entertainment, a housekeeper, eating out, a cellular phone, and church contributions. Many of his expenses are discretionary. Although he has retired, there has been no allegation that his earning capacity has changed. At the time of his retirement, he was fifty-four years old and in good health. He is also working approximately thirty hours a week at the Atlanta Auto Auction.

For her part, Ms. Kennedy now works full time as a law office receptionist earning $6.50 per hour. Her net take home pay per month is $900. She has few marketable skills and is unlikely to increase her earning capacity, although she testified that she has looked for higher-paying jobs.

Since the divorce, she has been forced to deplete her assets for living expenses and now has a negative net worth. She lives in a one-bedroom apartment and has the added expense of a car payment that she did not have when the parties divorced. Even with the addition of the pension payments, she will just be able to meet her monthly expenses. Accordingly, we have determined that Mr. Kennedy has failed to show there has been a substantial, material change in circumstances since the divorce that would justify terminating his obligation to continue paying spousal support to Ms. Kennedy.

## II.
### THE AWARD FOR MS. KENNEDY'S LEGAL EXPENSES

As a final matter, Ms. Kennedy has asked this court to award her attorney's fees related to this appeal because of her bleak financial condition. The trial court awarded her attorney's fees for her defense of Mr. Kennedy's petition and for the prosecution of her contempt petition.

An award of attorney's fees in a divorce action is treated as an additional award for spousal support. *Smith v. Smith*, 912 S.W.2d at 161; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). Although courts have wide discretion to award attorney's fees, they should do so only when the spouse seeking them lacks sufficient funds to pay his or her legal expenses, or would be required to deplete other assets in order to do so. *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994); *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

We have determined that the disparate financial circumstances of the parties supports an award of Ms. Kennedy's attorney's fees for this appeal. When Mr. Kennedy stopped paying his spousal support in February 1997, Ms. Kennedy was forced to subsist on $900 a month, which left her in arrears on her rent and other monthly bills. She was unable to pay any of the attorney's fees she incurred in the lower court. Because Ms. Kennedy does not have adequate financial resources, we find that Mr. Kennedy should be required to pay for her attorney's fees related to this appeal. On remand, the trial court shall take proof regarding the amount of these expenses and award Ms. Kennedy a judgment for the reasonable legal expenses she has incurred as a result of this appeal.

## III.

We affirm the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal to Roger Edward Kennedy and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-4-