# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 12, 2001 Session

## THOMAS STOY WHITE, III v. KATHY SUE WHITE

**Direct Appeal from the Circuit Court for Sumner County**
**No. 19196-C; The Honorable Arthur McClellan, Judge**

---

**No. M2000-02674-COA-R3-CV - Filed November 30, 2001**

---

This appeal arises from the Appellant's filing of a Petition to Modify the Final Decree of Divorce in the Circuit Court of Sumner County. The Appellant requested a downward deviation in child support and a reduction in alimony. The Appellant also requested that he no longer be required to reimburse the Appellee for health insurance coverage. The Appellee filed a Counter-Petition requesting an upward deviation in child support. Following a trial on the Petition and Counter-Petition, the trial court entered an order reducing the Appellant's child support obligation to $1,000.00 per month. The trial court declined to modify the award of rehabilitative alimony and health insurance coverage.

The Appellant appeals the decision of the Circuit Court of Sumner County setting child support at $1,000.00 per month and refusing to modify the award of rehabilitative alimony and health insurance coverage. For the reasons stated herein, we affirm in part and reverse in part the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Bruce N. Oldham, Sue Hynds Dunning, Gallatin, TN, for Appellant

Michael W. Edwards, Hendersonville, TN, for Appellee

### OPINION

### I. Facts and Procedural History

On August 16, 1999, the Appellant, Thomas Stoy White, III ("Mr. White"), and the Appellee, Kathy Sue White ("Ms. White"), were divorced by Final Decree of Divorce entered by the Circuit

Court of Sumner County. The Final Decree of Divorce incorporated the Marital Dissolution Agreement entered into by the parties. As relevant to this appeal, the Marital Dissolution Agreement ordered the following: (1) granted custody of the parties' two minor children to Ms. White; (2) awarded standard visitation to Mr. White; (3) ordered Mr. White to pay child support to Ms. White in the amount of $1,633.00 per month;[1] (4) ordered Mr. White to pay rehabilitative alimony to Ms. White in the amount of $1,167.00 per month for four years; (5) ordered Mr. White to reimburse Ms. White for four years for her health insurance and to pay one-half of uncovered non-elective expenses; (6) ordered Mr. White to reimburse Ms. White for the children's health insurance and to divide all uncovered medical expenses with Ms. White.

On December 10, 1999, Mr. White filed a Petition to Modify the Previous Order of the Court. Mr. White requested a downward deviation of child support due to a significant variance and reduction in alimony due to a substantial change of circumstances. Mr. White claimed that, since the entry of the Final Decree of Divorce, the television show at which he worked had been cancelled, and his income had been reduced from over $100,000.00 per year, or approximately $8,300.00 per month, to approximately $3,800.00 for the months of November and December, 1999 and approximately $2,800.00 per month thereafter. Mr. White claimed that Ms. White was living with someone. Mr. White also filed a Motion for Pendente Lite Relief requesting a temporary reduction in his child support and alimony obligations. On January 7, 2000, the trial court held a pendente lite hearing and ordered a reduction in Mr. White's child support obligation to $659.00 per month. The trial court found that it could not modify the alimony obligation.

On February 28, 2000, Ms. White filed a Response and Counter-Petition. Ms. White requested an upward deviation of child support due to a substantial change of circumstances. Ms. White claimed that Mr. White's income had increased to $200,000.00 per year, or approximately $16,500.00 per month, since the entry of the Final Decree of Divorce. Ms. White also claimed that the television show at which Mr. White had been working had been cancelled prior to the entry of the Final Decree of Divorce. Ms. White argued that rehabilitative alimony could not be modified until the lapse of the allotted four years that rehabilitative alimony was to be paid by Mr. White. On March 20, 2000, Ms. White filed an Amended Counter-Petition seeking a change in Mr. White's visitation schedule with the children. On April 24, 2000, Mr. White filed an Answer to Amended Counter-Petition.

On April 27, 2000, Mr. White filed a Motion for Restraining Order. Mr. White requested the trial court to enjoin, restrain, and prohibit Ms. White from making harassing telephone calls to Mr. White. The trial court granted Mr. White's Motion for Restraining Order. On May 4, 2000, Ms. White filed a Motion to Dissolve Restraining Order. The trial court granted Ms. White's Motion to Dissolve Restraining Order. On May 12, 2000, Mr. White filed a Motion for Restraining Order and Visitation. Mr. White requested the trial court to enjoin, restrain, and prohibit Ms. White from making harassing telephone calls to Mr. White. Mr. White also requested the trial court to establish a specific visitation schedule so that he be granted visitation every Wednesday evening. On May 18,

---

[1]The parties agreed to deviate from the Tennessee Child Support Guidelines because Mr. White is a self-employed musician and does not have an employer to which a wage assignment could issue.

2000, Ms. White filed a Response to Motion for Restraining Order and Visitation. On May 26, 2000, the trial court entered an Order on Motion for Restraining Order and Visitation. The trial court issued a joint and mutual restraining order. The trial court also modified the Final Decree of Divorce to provide Mr. White visitation every weekend and every Wednesday evening.

On May 26, 2000, Mr. White filed a Motion to Amend Petition. Mr. White sought to modify the Final Decree of Divorce to state that Mr. White was not required to reimburse Ms. White for health insurance coverage. Mr. White claimed that Ms. White had obtained employment at a facility which provided its employees with health insurance. On May 30, 2000, Ms. White filed a Response to Motion to Amend Petition. On June 16, 2000, the trial court entered an Order Granting Motion to Amend Petition. On July 13, 2000, Ms. White filed a Response to Amended Petition. Ms. White claimed that health insurance at her employment was deducted from her paycheck.

On August 30, 2000, the trial was held on the Petition and the Counter-Petition. Ms. White introduced as an exhibit the loan application that Mr. White filled out on or around December 6, 1999 for the purchase of a $200,000.00 home. The loan application stated that Mr. White's monthly income was $16,400.00 per month, or $198,800.00 per year. Mr. White testified that he never told anyone that his monthly income was $16,400.00 per month. Mr. White also testified that he applied for the loan over the phone and that, during the closing, he signed the documents without reading them. Jamie McCartney ("Ms. McCartney"), a loan originator for WaterStone funding, testified that Mr. White never specifically told her he made $16,400.00; however, "[b]asically I told him what it was going to take to purchase that particular house, and he agreed." Ms. McCartney also testified that Mr. White applied for the loan face-to-face and that, during the closing, she reviewed each document with Mr. White.

On September 15, 2000, the trial court entered an Order reducing Mr. White's child support obligation to $1,000.00 per month. The trial court awarded $2,648.51 to Ms. White for the difference of $341.00 per month in child support retroactive from the pendente lite hearing on January 7, 2000 to September 15, 2000. The trial court found that the testimony of Mr. White was not credible. Based upon the other testimony at trial, the trial court found that Mr. White falsified his income in order to obtain a loan. The trial court found, however, that Mr. White did not make $16,400.00 per month. The trial court declined to modify the award of rehabilitative alimony and health insurance coverage.

On September 15, 2000, Ms. White filed a Motion to Alter or Amend. Ms. White claimed that Mr. White refused to exercise the visitation as ordered and requested the trial court to increase child support. On September 20, 2000, Mr. White filed a Response to Motion to Alter or Amend. On October 4, 2000, the trial court entered an Order denying the Motion to Alter or Amend. The trial court stated that the downward deviation in child support was based on the extended visitation time that Mr. White had with the children. This appeal followed.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Law and Analysis

The following issues are presented for our review:

(1) whether the trial court erred by setting child support at $1,000.00 per month;
(2) whether the trial court erred by refusing to modify the award of rehabilitative alimony based upon a substantial and material change of circumstances; and
(3) whether the trial court erred by refusing to modify the provisions of the Final Decree of Divorce concerning health insurance coverage.

We will examine each of these issues in turn.

The first issue presented for our review is whether the trial court erred by setting child support at $1,000.00 per month. In determining child support, courts must apply as a rebuttable presumption the Tennessee Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services. See TENN. CODE ANN. § 36-5-101(e)(1) (Supp. 2000). Under the Guidelines, the amount of child support is calculated based on a percentage of the obligor parent's net income. See TENN. COMP. R. & REGS. ch. 1240-2-4-.03 (1994). For two children, as in the case at bar, that percentage is thirty-two percent. See id. The trial court must modify child support payments if a significant variance is found between the Guidelines and the amount of child support currently ordered. See TENN. CODE ANN. § 36-5-101(a)(1) (Supp. 2000). When the child support obligation exceeds $100.00 per month, the Guidelines define a significant variance as one of at least fifteen percent. See TENN. COMP. R. & REGS. ch. 1240-2-4-.03. Thus, "[a] modification must be made if the existing support obligation varies by fifteen percent or more from the amount that the obligation would be based on the obligor parent's current income." Turner v. Turner, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995).

Since the Guidelines speak in terms of percentages, the trial court is required to determine the obligor's net income before it can set or modify child support. See id. In the case at bar, the trial court failed to make a finding of Mr. White's net income except to state that Mr. White's income was not $16,400.00 per month. The trial court set child support at $1,000.00 per month. With no deviation from the Guidelines, child support in the amount of $1,000.00 per month indicates that Mr.

White's net income was $3,125.00 per month.[2]  There was no proof before the court, however, that Mr. White's net income was $3,125.00 per month.  Rather, Mr. White testified that his anticipated year 2000 gross income was $61,183.92, or $5,098.66 per month.  Mr. White testified that his anticipated year 2000 net income was $2,787.23 per month.  With no deviation from the Guidelines, child support would be $891.91 per month based upon a net income of $2,787.23 per month.[3]

In setting child support at $1,000.00 per month, the trial court stated that this included a downward deviation based on the extended visitation awarded to Mr. White.  In Jones v. Jones, 930 S.W.2d 541 (Tenn. 1996), the Tennessee Supreme Court held that Rule 1240-2-4-.04(2) and (4) of the Guidelines provided for a downward deviation in the instance that the children are spending more visitation time with the obligor parent than assumed by the Guidelines.  See id. at 545.  Rule 1240-2-4-.04(6) of the Guidelines assumes standard visitation at eighty overnight visits per year.  See TENN. COMP. R. & REGS. ch. 1240-2-4-.04(6).  In the case at bar, both parties agree that Mr. White is exercising visitation at more than eighty overnight visits per year.  Thus, under the Guidelines, the trial court properly included a downward deviation based on the extended visitation awarded to Mr. White.  The trial court erred, however, by failing to state the amount of child support that would have been ordered under the Guidelines if the trial court had not included a downward deviation.  Section 36-5-101(e)(1) of the Tennessee Code states, "Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines."  TENN. CODE ANN. § 36-5-101(e)(1) (Supp. 2000).

We find that the trial court erred by failing to make a determination as to Mr. White's income and apply the Guidelines accordingly.  We also find that the trial court erred by failing to state the amount of child support that would have been ordered under the Guidelines in accordance with section 36-5-101(e)(1) of the Tennessee Code.  Accordingly, we reverse the trial court's award of $1,000.00 per month in child support and remand for a determination of Mr. White's income and application of the Guidelines.  The judgment of $2,648.51 awarded to Ms. White for the difference of $341.00 per month in child support retroactive from the pendente lite hearing on January 7, 2000 to September 15, 2000 must be adjusted consistently with any modification on remand that the trial court makes to the amount of child support.

The second issue presented for our review is whether the trial court erred by refusing to modify the award of rehabilitative alimony based upon a substantial and material change of circumstances.  Section 36-5-101(d)(2) of the Tennessee Code states that "[a]n award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances."  TENN. CODE ANN. §36-5-101(d)(2) (Supp. 2000).  The change in circumstances must have been unforeseeable at the time of the entry of

---

[2]$3,125.00 x 32% = $1,000.00.

[3]$2,787.23 x 32% = $891.91.

the final decree of divorce awarding alimony. See Sannella v. Sannella, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). The change in circumstances must also affect the obligor spouse's ability to pay or the obligee spouse's need for alimony. See Bowman v. Bowman, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). The party seeking modification of a support obligation bears the burden of proving that there has been a substantial and material change in circumstances and that the modification is warranted. See Watters v. Watters, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). If the petitioner meets this burden, the court then utilizes the same factors in section 36-5-101(d)(1) of the Tennessee Code that were considered in making the initial award to determine the appropriate modification. See Norvell v. Norvell, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990).

In her Response and Counter-Petition, Ms. White argued that the trial court could not modify rehabilitative alimony until the lapse of the four years that rehabilitative alimony was to be paid by Mr. White. In ruling on Mr. White's Motion for Pendente Lite Relief, the trial court found that "the Court cannot modify the alimony." In its September 15, 2000 Order, the trial court again declined to modify rehabilitative alimony. As stated above, awards of rehabilitative alimony can clearly be modified in situations where there has been a substantial and material change in circumstances. In the case at bar, the trial court failed to determine whether a substantial and material change in circumstances had occurred which warranted a modification of rehabilitative alimony. We find that the trial court erred by failing to determine whether rehabilitative alimony should be modified. Accordingly, we reverse the trial court's decision on this issue and remand for consideration of whether rehabilitative alimony should be modified.

The third issue presented for our review is whether the trial court erred by refusing to modify the provisions of the Final Decree of Divorce concerning health insurance coverage. Under the Final Decree of Divorce, Mr. White was required to reimburse Ms. White $211.00 per month for a health insurance policy which covered the children and herself. At the trial, Mr. White testified that, subsequent to the Final Decree of Divorce, Ms. White agreed to allow him to take out a health insurance policy which covered Mr. White, his present wife, the children, and Ms. White. Mr. White claimed that Ms. White then refused to be covered by this health insurance policy because she would lose maternity insurance. Mr. White testified that Ms. White obtained another health insurance policy through her new employer, Baptist Hospital, which covered the children and herself. Mr. White testified that he wanted to either add Ms. White to his family's health insurance policy or reimburse her for her health insurance coverage through Baptist Hospital. Mr. White sought a modification of the Final Decree of Divorce that he no longer had to reimburse $211.00 per month to Ms. White for health insurance coverage on the children and herself.

Ms. White testified that the children were covered on three different health insurance policies and that she was covered on two different health insurance policies. Ms. White testified that, as of November, 2000, she would be discontinuing the health insurance policy through Baptist Hospital. Ms. White also testified that she did not want to be added to Mr. White's health insurance policy because it did not contain maternity insurance as did her original health insurance policy. Ms. White requested that Mr. White continue to reimburse her $211.00 per month for the original health insurance policy on the children and herself. The trial court ordered that health insurance coverage

was to remained unchanged such that Mr. White would continue to reimburse $211.00 per month to Ms. White. We agree with the trial court's decision. Ms. White has paid for the original health insurance policy on the children and herself since the Final Decree of Divorce. As of November, 2000, Ms. White would no longer be covered by the Baptist Hospital health insurance policy. Ms. White's original health insurance policy and Mr. White's health insurance policy were not substantially similar in that Ms. White would lose maternity insurance if she was added to Mr. White's health insurance policy. For these reasons, we agree that health insurance coverage should remain unchanged from the Final Decree of Divorce. Mr. White must continue to reimburse $211.00 per month to Ms. White for health insurance for the children and herself. Accordingly, the trial court's decision on this issue is affirmed.

### IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part. This case is remanded to the trial court for further consideration in accordance with this opinion. Costs of this appeal are taxed equally against the Appellant, Thomas Stoy White, III, and his surety, and the Appellee, Kathy Sue White, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE