IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 30, 2001 Session

## CATHY L. ALLEN v. JOHN FOX ALLEN, JR.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-00-0092-3     D. J. Alissandratos, Chancellor**

---

**No. W2000-01844-COA-R3-CV - Filed June 11, 2001**

---

This appeal arises from a divorce action to end a fifteen year marriage. At the time of trial, Husband was forty-nine years old and Wife was forty-three years old and had been suffering from lupus for ten years. The trial court awarded Wife alimony *in futuro*, amounting to $1,300 per month which was to be increased to $1,800 per month after the latter of one year from entry of the final divorce decree or when the parties' son no longer resided with Wife. The trial court also awarded Wife her attorney's fees in the amount of $7,500. Husband appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and JOE G. RILEY, SP. J., joined.

S. Denise McCrary and Stephanie M. Micheel, Memphis, Tennessee, for the appellant, John Fox Allen, Jr.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellee, Cathy Lackland Allen.

### OPINION

Cathy Lackland Allen (Ms. Allen) and John Fox Allen, Jr. (Mr. Allen) were married in June of 1985 and separated in January of 2000. Ms. Allen's complaint for absolute divorce alleged irreconcilable differences and inappropriate marital conduct. Mr. Allen filed a counter-complaint for divorce alleging the same grounds. The trial of this matter was bifurcated with the issue of grounds for divorce being tried prior to the issues of division of marital property, alimony, and attorneys' fees. The trial court awarded Ms. Allen the divorce based upon the court's finding that Mr. Allen was guilty of adultery.

At the time of trial, Mr. Allen was forty-nine years old, and Ms. Allen was forty-three years old. Mr. Allen completed three years of college, but never obtained a degree. During the majority of the parties' marriage, Mr. Allen worked as a finance manager for automobile sales at local automobile dealerships earning between $70,000 and $80,000 annually. Two months prior to Ms. Allen's filing for divorce, Mr. Allen voluntarily left his employment as a finance manager and accepted employment as a loan originator with First Horizon, a division of First Tennessee Bank, earning between $40,000 and $50,000 annually.[1]

Ms. Allen holds a bachelors of science degree in office administration. During the marriage, Ms. Allen primarily worked as an administrative assistant for various businesses, earning, at most, $30,000 per year. Approximately one year before the divorce, Ms. Allen accepted a position as the concierge of the Plaza Club for Blues City Baseball with the Memphis Redbirds baseball team earning $38,000 per year.

Ms. Allen was diagnosed with lupus, an immune system disorder, in 1990 by Dr. Lowell B. Robison (Dr. Robison). Dr. Robison classified Ms. Allen's lupus as moderately severe. As a result of her condition, Ms. Allen is required to take numerous medications to control her lupus, and she has had to take leave of absences from her employment in the past. Dr. Robison testified that Ms. Allen's condition will very likely get worse over the years, but he could not predict how much worse.

After hearing proof on this matter, the trial court found that Mr. Allen had deliberately taken a job earning less that what he was accustomed to earning previously. The court further found that in two to three years Mr. Allen would be able to earn, on average, the same as what he had previously been earning. The court ordered Mr. Allen to pay alimony *in futuro* in the amount of $1,300 per month, which was to be increased to $1,800 per month upon the latter of twelve months from entry of the final divorce decree or when the parties' son no longer resides with Ms. Allen. Additionally, the court ordered Mr. Allen to pay Ms. Allen's attorney's fees in the amount of $7,500.

Mr. Allen brings this appeal and raises the following issues, as we perceive them, for this court's review:

1.      Whether the trial court erred in awarding Ms. Allen alimony *in futuro* in the amount of $1,800 per month.

2.      Whether the trial court erred in awarding Ms. Allen her attorney's fees.

Additionally, Ms. Allen seeks her attorney's fees on appeal.

---

[1]Mr. Allen testified that he would earn between $40,000 and $50,000 during his first year with First Horizon. He further testified that he had the potential to earn between $60,000 and $80,000 after being with First Horizon for two or three years.

Because this matter was tried before the court sitting without a jury, our review of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). As the issues regard questions of law, our review is *de novo* with no presumption of correctness. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); Tenn. R. App. P. 13(d). Our *de novo* review is tempered by the fact that the trial court is in the best position to assess the credibility of the witnesses and such determinations are afforded great weight on appeal. *See Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). On issues regarding the credibility of witnesses, the trial court will not be reversed unless there is clear and convincing evidence to the contrary. *See Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974).

### *Alimony*

Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. While the alimony analysis is factually driven, the court must also balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code.[2]

---

[2]Section 36-5-101 (d)(1) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient . . . . Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

     (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

     (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

     (C) The duration of the marriage;

     (D) The age and mental condition of each party;

     (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

     (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

     (G) The separate assets of each party, both real and personal, tangible and intangible;

     (H) The provisions made with regard to the marital property as defined in § 36-4-121;

     (I) The standard of living of the parties established during the marriage;

     (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

     (K) The relative fault of the parties in cases where the court, in its discretion, deems it

(continued...)

Although all statutory factors listed in section 36-5-101(d)(1) are important and are considered by the trial court, need and the ability to pay are the critical factors in setting the amount of an alimony award. *See Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998); *Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997); *Luna v. Luna*, 718 S.W.2d 673 (Tenn. Ct. App. 1986).

The trial court has broad discretion concerning the amount, type, and duration of alimony based upon the particular facts involved and such discretion will not be interfered with absent a showing of abuse. *See Watters v. Watters*, 959 S.W.2d 585, 593 (Tenn. Ct. App. 1997) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Luna*, 718 S.W.2d at 675). Accordingly, this Court is not inclined to alter a trial court's award of alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. *See Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); *Gilliam v. Giliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988).

According to Ms. Allen's affidavit of her monthly income, expenses, assets and liabilities, as well as her testimony at trial, Ms. Allen has total monthly expenses in excess of $3,864 and has a total net monthly income of $2,338. This leaves Ms. Allen with a minimum monthly deficit of $1,526. Further, Ms. Allen delivered the following undisputed testimony:

Q: How are you going to live without financial assistance?

A: I won't be able to live without financial assistance.

Q: And are you asking the Court to order your husband to pay $2,000 per month in alimony to you?

A: Yes, sir.

. . . .

Q: And does your husband have the ability to pay that?

A: Yes, sir.

---

[2](...continued)

appropriate to do so; and

    (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000).

-4-

Q:     Does your husband have any health or other condition that in any way impedes his ability to earn an income that would afford him the opportunity to pay you that?

A:     No, sir.

Regarding his earning capacity, Mr. Allen testified as follows:

Q:     How are you being paid?

A:     I'm paid a draw check, which is about $2,100 a month, and then any commission I make is taken from that. So if I made $4,000 in commission, I had a $2,000 draw check, they would give me a check at the end for $2,000, because I already that had (sic) $2,000.

Q:     How are your commissions figured?

A:     The commissions are figured on what they call basis points. . . . If the bank has what they call a par rate of 10 percent on the loan and we charge the customer 11 percent, we get a percentage of what we charge.

. . . .

Q:     It's true, is it not, that individuals in the same job that you have at First Tennessee earn anywhere from $60,000 to $70,000 to $80,000 a year. Correct?

A:     Yes, sir.

Q:     So you would acknowledge then that you're just as capable as those individuals, aren't you?

A:     Those individuals have been there two or three years. They don't make it the first year.

Q:     So then it is your testimony, correct me if I'm wrong, that after the first year, when you're there two or three years, you could make $60,000 or $70,000 or $80,000?

A:     It is possible.

Mr. Allen further testified by affidavit that in the first six months of employment as a loan originator his average gross monthly income was $4,200.

Mr. Allen disputes the trial court's award of alimony in the amount of $1,800 per month, asserting that the trial court based its alimony award on Mr. Allen's average gross annual income of $70,000 rather than his gross annual income of approximately $50,400[3] at the time of trial. Mr. Allen cites *Marcus v. Marcus*, No. 02A01-9611-CV-00286, 1998 WL 29645, at **3 (Tenn. Ct. App. Jan. 28, 1998) (*no perm. app. filed*), for the proposition that there must first be a threshold finding that the obligor is willfully and voluntarily underemployed before the trial court can base an award on the obligor's earning capacity rather than his actual income. Although *Marcus* concerned a child support award, we note the following language: "To calculate a child support award based on earning capacity rather than actual net income, there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed." *Marcus*, 1998 WL 29645, at **3 (citations omitted) (emphasis added). We believe that the trial court in the instant case made such a finding:

> This Court thinks that what was going on is Mr. Allen had a plan. And that plan was that he was going to abandon his old wife, he was dissatisfied with her, he was going to enter into a course or pattern of conduct such that he was going to make himself less able to meet that responsibility. ***He deliberately has taken a job that is less than what he's been making.*** But fortunately, on average, in two or three years, he'll be making the same as what he was making on average, if you take out 1999, which was an abnominally (sic). (emphasis added).

Mr. Allen testified that he voluntarily left his employment with an automobile dealership as its finance manager earning on average over $70,000 annually to accept a position as a loan originator with First Horizon. He further testified that he was content earning $40,000 to $50,000 per year. On this issue, the trial court expressly found that Mr. Allen deliberately took a job earning less than what he previously earned. We are mindful of the fact that the trial court is in the best position to assess the credibility of the witnesses and such determinations are afforded great weight on appeal. Because we conclude that there is no clear and convincing evidence in the record to contradict the lower court's finding on issues which hinge on witness credibility, we hold that the trial court did not abuse its discretion in awarding Ms. Allen alimony in the amount of $1,800 per month. *See Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974).

Mr. Allen next asserts that he does not have the ability to pay Ms. Allen the alimony as awarded by the trial court. As the trial court determined, Mr. Allen accepted a lower paying position in order to avoid having to support Ms. Allen. Indeed Mr. Allen testified to the fact that he did not believe Ms. Allen was entitled to any support whatsoever:

---

[3]This figure was calculated by taking Mr. Allen's average gross income for the first six months' employment as a loan orginator ($4,200) and multiplying it by the 12 months in a year.

Q:     [Y]ou have submitted a proposed ruling and you don't have anywhere within this proposed ruling one dollar of support that you feel like you should provide to your wife, do you?

. . . .

A:     No, sir, I did not. And that's the way I answered it. I sure did not.

If Mr. Allen is unable to currently pay Ms. Allen the support she was awarded, it is because Mr. Allen is voluntarily underemployed. Although we realize that a person has a right to pursue happiness and to make reasonable employment choices, an obligor spouse will not be able to lessen or avoid his support obligation as a result of choosing to work at a lower paying job.

Mr. Allen lastly asserts that the trial court should have awarded Ms. Allen rehabilitative alimony rather than alimony *in futuro*. Section 36-5-101(d)(1) of the Tennessee Code states that

[i]t is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient . . . .

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 2000).

In *Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993), the General Assembly's preference for rehabilitative alimony over alimony *in futuro* was discussed by the Tennessee Supreme Court. It is clear from the opinion in *Self* that a trial court should grant alimony *in futuro* only when rehabilitation is not feasible and such long term support is necessary. *See also Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992). The trial court must, therefore, make a threshold determination that, considering all relevant factors, rehabilitation of the economically disadvantaged spouse is not feasible. *See Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

In the instant case, Ms. Allen suffers from lupus, a disorder in which the immune system manufactures antibodies that attack various parts of the body. Her physician, Dr. Robison, testified that Ms. Allen suffers from moderately severe lupus with her chief complaints being fatigue, musculoskeletal pain, and occasional fever. Ms. Allen currently takes four medications to control her condition, namely Imuran (a chemotherapy-type drug), Prednisone (anti-inflammatory drug), Darvocet (painkiller), and Klonopin, and she must be seen by Dr. Robison monthly. Dr. Robison predicted that Ms. Allen would not get better over the years, but rather would very likely get somewhat worse. He did testify that, if Ms. Allen's lupus gets worse, it could impact her ability to

work and could result in her hospitalization. At this time, however, Dr. Robison has not restricted Ms. Allen's work schedule as long as she "stays under control." Lupus has no known cure, but patients who respond well to treatment and medication can lead active, healthy lives.

The trial court made the following findings of fact pertinent to this issue:

I have taken into account the relevant earning capacity, obligations, needs, and financial resources of these parties, including their incomes from pension, profit sharing, retirement plans, and all other sources.

I'm also considering the relative education and training of each party, and the ability and opportunity of each of these parties to secure any additional education and training and necessity.

I'm also considering the duration of the marriage, the age and mental condition of each of the parties. And I find that the mental condition of the wife has been considerably adversely effected by these proceedings, and by the conduct of her husband. I also find that her physical condition, in considering that, is substantially worse than her husband's, who has none.

And I'm going to take into account her disability and inability, because of a chronic debilitating disease, and more particularly on that, I find this: While she's functioning at a certain level right now, her rheumatologist, Dr. Robinson, on Page 10 of his deposition, Line 18: "If you consider the overall prognosis, discontinuing these fluctuations that are likely to occur, it certainly is not going to - -" this is the answer "- - is not going to get any better, and very likely will get some worse over the years. I can't predict the degree of worse, though." Now, that is a very telling statement.

In his deposition, he also points out that during these ten years she has never had the benefit of a remission. In essence, what he says is she's just going to get worse. Further on in his testimony, he testifies . . . that in his opinion, she has a moderately severe case of Lupas (sic). Her prognosis is not good.

It is clear that the trial court properly considered the relevant factors as provided in section 36-5-101(d)(1) of the Tennessee Code. Because we do not find the trial court's award of alimony to Ms. Allen to be contrary to the evidence, we hereby affirm the trial court's award of alimony *in futuro* in all respects.

### *Attorney's Fees*

Trial courts have the discretion to award additional sums to defray the legal costs resulting from a divorce proceeding. *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983); *Palmer v. Palmer*, 562

S.W.2d 833, 838-39 (Tenn. Ct. App. 1977). In divorce cases, awards for litigation expenses are considered alimony *in solido*, *see Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), and are appropriate when one spouse is economically disadvantaged, lacks sufficient resources with which to pay attorney's fees, or would be required to deplete one's resources. *See Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Brown*, 913 S.W.2d at 170. This Court is reluctant to interfere with the trial court's discretion in awarding attorney's fees unless there is a clear showing of abuse of that discretion. *See Aaron*, 909 S.W.2d at 411.

After a careful review of the record, we do not find that the trial court abused its discretion in awarding Ms. Allen her attorney's fees. Accordingly, we hereby affirm the trial court's award.

### *Attorney's Fees on Appeal*

Ms. Allen requests her attorney's fees on appeal. We deny this request.

### *Conclusion*

For the foregoing reasons, we affirm the trial court's award of alimony *in futuro* to Ms. Allen in the amount of $1,800 per month and the award of her attorney's fees incurred at trial in the amount of $7,500. The costs of this appeal are taxed to the Appellant, John Fox Allen, Jr., and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE